

**FILED**

Aug 16 2017, 12:45 pm

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Gary M. Selig
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Robert Bowman, Tommy Maurry, and Jacob Murphy, et al., | August 16, 2017 |
| *Appellants-Respondents,* | Court of Appeals Case No. 49A02-1606-MI-1463 |
| v. | Appeal from the Marion Superior Court |
| State of Indiana, | The Honorable Marc T. Rothenberg, Judge |
| *Appellee-Petitioner* | Trial Court Cause Nos. 49G02-1602-MI-4868 49G02-1602-MI-4926 |

**Baker, Judge.**

[1] Two parcels being shipped from one state to another caught the attention of a detective. The only articulated reasons for suspicion were: the parcels were being shipped to California; they were sent priority overnight; they were heavily taped; and they were each sent to the same recipient. After a K-9 unit gave positive alerts on both parcels, a search warrant was obtained. The only thing inside the parcels was cash, which was seized by the State as proceeds of drug trafficking. None of the individuals have ever been investigated for or charged with any crimes in connection with this case. The State now seeks to turn the seized cash over to the federal government.

[2] Jacob Murphy, Robert Bowman, and Tommy Maurry (collectively, the Appellants) appeal the trial court's order granting the State's motion to transfer approximately $30,000 to the United States. The Appellants argue that the seizure of the money exceeded the scope of the search warrants, meaning that the seizure was unlawful and the money may not be turned over to the federal government. We agree, and reverse and remand with instructions to order the return of the money to the Appellants.

## Facts

[3] On November 20, 2015, Indianapolis Metropolitan Police Detective Brian Thorla was visually inspecting parcels at a local shipping company. Several parcels came to the detective's attention, including the two that are at issue in this case. One parcel was sent by Bowman in Illinois to Murphy in California; the second was sent by Maurry in Illinois to Murphy in California. Appellants'

App. Vol. II p. 17, 23. The parcels drew Detective Thorla's attention because they were paid for priority overnight, heavily taped, and addressed to the same recipient in California, which is known by law enforcement "to be a source state for the importation/exportation of controlled substances . . . ." *Id.* Detective Thorla conducted a dog sniff of the parcels; the K-9 unit gave positive alerts on both parcels, indicating the presence of the odor of controlled substances.

[4] Detective Thorla sought and received search warrants for both parcels. The warrants authorized law enforcement to open and search the parcels "for controlled substances, records of drug trafficking, and proceeds of drug trafficking." *Id.* at 20, 26. Law enforcement opened and searched both parcels. They found no controlled substances or records of drug trafficking, but one parcel contained currency in the amount of $15,000 and the other contained currency in the amount of $15,300. Law enforcement seized the currency. No criminal charges were ever brought against any of the Appellants with respect to this matter, nor is there any indication that the Appellants have been the subject of any criminal investigation by Indiana or federal law enforcement authorities.

[5] On February 11, 2016, the State filed motions to transfer the currency at issue to the United States.[1] The Appellants objected, arguing that the seizure of the

---

[1] There are two separate underlying causes below—one for each of the two parcels. The causes have been consolidated.

currency exceeded the scope of the search warrant. Following a hearing, on June 7, 2016, the trial court issued an order granting the State's motions. In pertinent part, the trial court found as follows:

2. The appearance of the parcels, the excessive taping, the type of shipping and payment, the multiple parcels to the same destination in a known import state of controlled substances, and the positive K9 alert to the presence of the odor of controlled substances and all reasonable inferences drawn there from is probable cause to authorize the seizure of "proceeds of drug trafficking" located during a search of the parcel.

3. The specificity requirement regarding the items to be seized in a search warrant does not require an exact description or an itemized list of items but rather must describe the nature of the items to be seized and must be specific enough to remove discretion from the executing officers.

***

5. There is probable cause to justify the seizure of United States Currency located in the parcels as proceeds of drug trafficking within the scope of the warrant.

Appealed Order p. 4-5. The trial court stayed its order pending this appeal.

## Discussion and Decision

[6] The Appellants do not argue that the search was unlawful, nor do they dispute that, if the money was properly seized, it may properly be turned over to the

United States. Instead, the Appellants argue that the *seizure* of the money went beyond the scope of the search warrant, that the seizure was therefore unlawful, and that, as a result, the money may not be turned over to the federal government. This presents a question of law, to which we apply a de novo standard of review. *E.g.*, *Membres v. State*, 889 N.E.2d 265, 268 (Ind. 2008).

[7] The statute authorizing the turnover of seized property provides as follows:

> Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred, subject to the perfected liens or other security interests of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616a, or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

Ind. Code § 35-33-5-5(j). Our Supreme Court has held that "if the search or seizure of . . . property was unlawful, the turnover order must be reversed." *Membres*, 889 N.E.2d at 269.

[8] What we must determine, therefore, is whether the seizure of this currency was unlawful. A search warrant must describe "with particularity . . . the items to be seized." *Pavey v. State*, 764 N.E.2d 692, 702 (Ind. Ct. App. 2002). This requirement "restricts the scope of the search, authorizing seizure of only those things described in the warrant . . . ." *Id.* An exact description is not required, but the items to be searched for must be described with some specificity. *Overstreet v. State*, 783 N.E.2d 1140, 1158 (Ind. 2003).

[9] Here, the search warrants authorized law enforcement to open and search the parcels "for controlled substances, records of drug trafficking, and proceeds of drug trafficking." Appellants' App. Vol. II at 20, 26. The only way in which the seizure of the currency at issue falls under the search warrant, therefore, is if it can reasonably be concluded to be "proceeds of drug trafficking." *Id.* The State focuses primarily on whether currency constitutes "proceeds," but that narrows the question too much. Instead, we must determine whether this money was proceeds *of drug trafficking*. In other words, the search warrant did not (and could not) authorize the seizure of any and all currency; instead, that currency must be found to be "derived directly or indirectly from, produced through, or realized through" drug trafficking. Appellants' App. Vol. II p. 15.[2]

[10] The only evidence in the record supporting such a conclusion is as follows:

- The parcels were being shipped to California.
- The parcels were being sent to the same recipient.
- The parcels were heavily taped.
- The parcels were shipped priority overnight.
- A K-9 unit alerted to the two parcels.

We can easily dispense with the first four pieces of evidence. We are confident that a voluminous number of parcels meeting those criteria and having nothing

---

[2] The State argues that because this case arises under the turnover statute as opposed to the forfeiture statute, we need not consider whether there is a nexus between the seized property and any applicable offenses. Appellee's Br. p. 10. This argument misses the point. The language of *the search warrant itself* requires that we consider whether the currency at issue was reasonably considered to be the proceeds of drug trafficking. Therefore, we must address the relationship between the money and drug trafficking to determine the lawfulness of the seizure.

to do with drug trafficking are shipped in this country every day. If all money shipped in heavily taped parcels mailed to California via priority overnight mail could be seized as proceeds of drug trafficking, many last-minute gift recipients at holiday and birthday time would be sorely disappointed (and surprised).

[11] So, we are left with the fact that a K-9 unit gave positive alerts on both parcels at issue. The very most that this fact means is that at some point, someone handling the parcels transferred an odor of controlled substances to them. It may have been Bowman and Maurry, who sent the parcels, or it may have been any number of individuals involved with the handling of the parcels in transit.[3] And any of those individuals could conceivably have possessed and/or used the unidentified controlled substance either legally or illegally, with or without an intent to commit drug trafficking. But no controlled substances or evidence of controlled substances were actually found in the parcels, so there is simply no way to know.

[12] No drugs were found in the parcels. No drug paraphernalia was found in the parcels. No evidence of drug trafficking or any unlawful activity was found in the parcels. None of the Appellants have been charged with any state or federal

---

[3] We also note that it is well accepted that a great majority of United States currency (as well as the currency of other nations) is contaminated by drug residue, leading us to place even less credence on a positive alert from a K-9 unit alone with absolutely no other evidence suggesting drug trafficking. *See, e.g.*, Madison Park, *90 percent of U.S. bills carry traces of cocaine*, CNN (Aug. 17, 2009), http://www.cnn.com/2009/HEALTH/08/14/cocaine.traces.money; David Biello, *Cocaine Contaminates Majority of U.S. Currency*, Scientific American (Aug. 16, 2009), https://www.scientificamerican.com/article/cocaine-contaminates-majority-of-american-currency/.

offenses in connection with the parcels; indeed, there is no indication that they have even been under investigation. Under these circumstances, we find that the seizure of the currency in the parcels exceeded the scope of the search warrant—no reasonable person would conclude, based on these facts, that the currency was the proceeds of drug trafficking. Because the seizure was unlawful, the trial court's order granting the State's motion to turn the currency over to the United States was erroneous, and we reverse.

The judgment of the trial court is reversed and remanded with instructions to order the return of the currency to the Appellants.

Bailey, J., and Altice, J., concur.