

FILED

Nov 21 2018, 10:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew Abels
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Hodges,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

November 21, 2018

Court of Appeals Case No.
18A-MI-78

Appeal from the Marion Superior
Court

The Honorable John F. Hanley,
Judge

The Honorable Ian Stewart,
Commissioner

Trial Court Cause No.
49D11-1711-MI-40912

**Pyle, Judge.**

## Statement of the Case

[1]     Michael Hodges ("Hodges") appeals the trial court's order granting the State's

motion to transfer $60,990 of his money to the United States.  Hodges argues

that the seizure of his money was unlawful because it exceeded the scope of the search warrant. Concluding that the seizure was unlawful, we reverse the trial court's order granting the State's motion to turn the currency over to the United States and remand with instructions to the trial court to order the return of the money to Hodges.

We reverse and remand with instructions.

# Issue

Whether the trial court's order granting the State's motion to transfer Hodges' money to the United States was erroneous.

# Facts

In October 2017, Indianapolis Metropolitan Police Department Detective Brian Thorla ("Detective Thorla") was inspecting unopened packages at a local parcel shipping company when he noticed a suspicious package addressed from Hodges in Illinois to Christopher Smith in California. Specifically, Detective Thorla concluded that the package was suspicious because: (1) the shipping cost was paid in cash; (2) no signature was required at the time of the package's delivery; (3) additional tape was added to a self-sealing box; and (4) the shipping box was a new box from the shipping company. Detective Thorla set the package aside, and his K9 partner, Hogan ("K9 Hogan"), later conducted a dog sniff of it. After K9 Hogan gave a positive alert to the package, which indicated the presence of the odor of controlled substances, the detective sought and received a search warrant, which authorized law enforcement officers to

open the package and search for: "Illegal Controlled substances (Marijuana, Methamphetamine, Cocaine, Heroin, MDMA) also records of drug trafficking and proceeds of drug trafficking, bulk cash smuggling, money laundering, involving the proactive attempts of concealing currency as listed in the affidavit; as well as money orders and gift cards." (App. 23). The search warrant also authorized law enforcement officers to "seize such property, or any part thereof, found on such search." (App. 23).

[4] When Detective Thorla opened the package, he discovered vacuum sealed packets of United States currency. The packets contained a large quantity of twenty-dollar bills, which were wrapped tightly in rubber bands. The seized currency was removed from the sealed packets and hidden in another room where K9 Hogan gave another positive alert, which indicated the presence of the odor of controlled substances on the currency. Based on his training and experience, Detective Thorla recognized these factors to be indicators that the currency was the proceeds of drug trafficking.

[5] In November 2017, the State filed a motion to transfer the seized money to the United States. Specifically, pursuant to INDIANA CODE § 35-33-5-5, the State alleged that during the execution of a search warrant, "U.S. Currency was discovered and confiscated as proceeds of narcotics trafficking under Ind. Code Ann. 35-48-4-1 and money laundering under Ind. Code Ann. 35-45-15-4[.]" (App. 6). Based on the allegation, the State "move[d] the [trial] court to issue a Turnover Order authorizing the State to turn over to the appropriate federal

authority certain property seized from [Michael Hodges] and held by the State for forfeiture." (App. 6).

[6] Hodges filed an answer objecting to the State's motion to transfer wherein he argued that the seizure of the $60,990 was unlawful because it exceeded the scope of the search warrant. In support of his objection, Hodges cited *Bowman v. State*, 81 N.E.3d 1127 (Ind. Ct. App. 2017), *modified on denial of rehearing, trans. denied, cert. denied*, which involved the same detective and facts similar to his own case.

[7] Specifically, in *Bowman*, Detective Thorla obtained a search warrant to open and search two suspicious parcels "for controlled substances, records of drug trafficking, and proceeds of drug trafficking." *Bowman*, 81 N.E.3d at 1128. One parcel was sent by Bowman in Illinois to Jacob Murphy ("Murphy") in California, and the second parcel was sent by Tommy Maurry ("Maurry") in Illinois to Murphy in California. Law enforcement officials found $15,000 in each parcel and seized the $30,000. The State filed motions to transfer the $30,000 to the United States. After concluding that the appearance of the parcels, the excessive taping, the type of shipping and payment, the multiple parcels to the same destination in a known controlled substance import-export state, the positive K9 alert to the presence of the odor of controlled substances, and the reasonable inferences to be drawn therefrom constituted probable cause to authorize the seizure, the trial court granted the State's motion.

On appeal, Bowman, Murphy, and Maurry argued that the seizure of the $30,000 was unlawful because the seizure went beyond the scope of the search warrant. This Court agreed. *Id.* at 1131. Specifically, we explained that the only evidence that this money was obtained through drug trafficking was: (1) the parcels were being shipped to California; (2) they were being sent to the same recipient; (3) they were heavily taped; (4) they were shipped priority overnight; and (5) a K9 unit alerted to the parcels. *Id.* at 1130. We further explained the insignificance of this evidence as it related to drug trafficking as follows:

> We can easily dispense with the first four pieces of evidence. We are confident that a voluminous number of parcels meeting those criteria and having nothing to do with drug trafficking are shipped in this country every day. If all money shipped in heavily taped parcels mailed to California via priority overnight mail could be seized as proceeds of drug trafficking, many last-minute gift recipients at holiday and birthday time would be sorely disappointed (and surprised).

*Id.* We also explained that the remaining fact that a K9 unit gave positive alerts on both parcels meant only that at some point, someone handling the parcels transferred an odor of controlled substances to them. *Id.* We further explained that this could have been the parcels' senders or any number of individuals involved with handling the parcels in transit. *Id*.

We concluded that where no evidence of drug trafficking or any other unlawful activity was found in the parcels and neither the senders nor the recipient had been charged with any state or federal offenses in connection with the parcels,

no reasonable person would conclude that the currency discovered in the parcels was the proceeds of drug trafficking. *Id.* at 1131. Accordingly, we further concluded that the seizure was unlawful, and the trial court's order granting the State's motion to turn the currency over to the United States was erroneous. *Id.* We therefore reversed and remanded with instructions to order the return of the currency to the appellants. *Id.*

[10] In his answer objecting to the State's motion to transfer his $60,990 to the United States, Hodges argued that:

> 14. The same analysis the Court of Appeals applied in *Bowman* to reverse the trial court's order granting the turnover order request should apply to this case. Detective Thorla cited the same essential factors in this case for deeming the package suspicious as he did in *Bowman*. This case involves a positive dog alert but no additional evidence of criminality once the package was opened just as in *Bowman*. The Court of Appeals in *Bowman* clearly explained that a positive dog alert could be completely consistent with legal activity . . . .
>
> 15. It makes no difference that the State has amended its search warrant affidavit and/or the search warrant to include a request to seize records or proceeds of "bulk cash smuggling" or "money laundering" in addition to its previous request in *Bowman* to search for "proceeds of drug trafficking", because the State still has presented insufficient evidence that the money seized in this case is records or proceeds of any of those things. The fact that a dog alerted to the package is no more an indication it is evidence that the money is proceeds of "money laundering or "bulk cash smuggling" no more so than it was considered evidence that the money was proceeds of drug trafficking in *Bowman*.

16. Based on the holding of *Bowman* and the information presented in the search warrant and search warrant affidavit of this case, defendant would request the court deny the State's turnover request in this case, because the seizure of the currency was unlawful just as it was in *Bowman*.

(App. 14).

[11] At a hearing on the turnover order, Hodges testified that he is an NBA agent and that he also owns a company that resells tickets to sporting events. He explained that the $60,990 belonged to him and that he had sent it to a contact in California to purchase a large number of World Series tickets that he had planned to resell. Hodges denied obtaining the $60,990 from selling drugs or other illegal activity. It does not appear that Hodges was charged with any state or federal offenses in connection with the parcel.

[12] After the parties had presented evidence, the following colloquy ensued:

> Trial Court: So, in *Bowman* that it appears from my reading the case that affidavit said proceeds from drug trafficking. So, *Bowman* had to determine was – were these proceeds from drug trafficking? Here, our affidavit does not say just proceeds of drug trafficking, correct?
>
> State: That's correct.
>
> Trial Court: It says bulk cash smuggling.
>
> State: Correct.
>
> Trial Court: So, do I even need to determine whether this cash is connected to drugs?

State:        No, you don't.  It could be just bulk cash smuggling.

Trial Court:  And did the evidence show bulk cash?

State:        Yes, it did.

Trial Court:  And would that give me probabl[e] cause to find, okay, this could be – could be legitimate, could not be legitimate, but is this probable cause for bulk cash smuggling?

State:        That would be our argument, Judge.  That's where we would be coming from.

              *     *     *     *     *     *     *     *

Trial Court:  *Bowman* does create an exception which is if the seizure went beyond the search warrant.  In *Bowman*, the search warrant was only for proceeds of drug trafficking.  In this case, the search warrant was for something greater, specifically identified bulk cash.  I think the evidence presented shows that this does not go beyond the search warrant.  As such, I think there is probabl[e] cause for the seizure based on the search warrant, based on what was discovered, and I will be Granting the Motion to Transfer this over.

(Tr. 49-50, 55-56).

[13] Hodges now appeals the trial court's grant of the State's motion to transfer his money to the United States.

# Decision

[14] At the outset, we note United States Supreme Court Justice Clarence Thomas' recent commentary on forfeiture:

> Modern civil forfeiture statutes are plainly designed, at least in part, to punish the owner of property used for *criminal* purposes. . . . [C]ivil forfeiture has in recent decades become widespread and highly profitable. . . . And because the law enforcement entity responsible for seizing the property often keeps it, these entities have strong incentives to pursue forfeiture. . . . This system – where police can seize property with limited judicial oversight and retain it for their own use – has led to egregious and well-chronicled abuses.

*Leonard v. Texas*, 137 S.Ct. 847, 847-48 (2017) (Justice Thomas respecting the denial of *certiorari*) (emphasis added).

[15]   We now turn to Hodges' argument that the seizure of his money went beyond the scope of the search warrant. This presents a question of law, to which we apply a de novo standard of review. *See Bowman*, 81 N.E.3d at 1129.

[16]   The statute authorizing the turnover of seized property provides as follows:

> Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred, subject to the perfected liens or other security interest of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616(a), or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

IND. CODE § 35-33-5-5. However, both the Indiana Supreme Court and this Court have held that if the seizure order was unlawful, the turnover order must be reversed. *See Membres v. State*, 889 N.E.2d 265, 268 (Ind. 2008); *Bowman*, 81 N.E.3d at 1129.

[17]     Here, as we did in *Bowman*, we must determine whether the seizure of Hodges'
money was unlawful.  Further, as we explained in *Bowman*:

> A search warrant must describe 'with particularity . . . the items
> to be seized.'  *Pavey v. State*, 764 N.E.2d 692, 702 (Ind. Ct. App.
> 2002).  This requirement 'restricts the scope of the search,
> authorizing seizure of only those things described in the warrant.
> . . .'  *Id.*  An exact description is not required, but the items to be
> searched for must be described with some specificity.  *Overstreet v.
> State*, 783 N.E.2d 1140, 1158 (Ind. 2003).

*Bowman*, 81 N.E.3d at 1129-30.

[18]     The search warrant in this case authorized law enforcement officers to open and
search the package for "Illegal Controlled substances (Marijuana,
Methamphetamine, Cocaine, Heroin, MDMA) also records of drug trafficking
and proceeds of drug trafficking, bulk cash smuggling, money laundering,
involving the proactive attempts of concealing currency as listed in the affidavit;
as well as money orders and gift cards."  (App. 23).  Therefore, the only way in
which the seizure of Hodges' currency falls under the search warrant is if it can
reasonably be concluded to be "proceeds of drug trafficking, bulk cash
smuggling, [or] money laundering."

[19]     The trial court in this case correctly pointed out that although the search
warrant in *Bowman* authorized the seizure of only the proceeds of drug
trafficking, the search warrant in this case also included the proceeds of bulk
cash smuggling or money laundering.  The trial court then concluded that it did
not need to determine whether the currency was connection to drug trafficking

because there was evidence that it was the proceeds of bulk cash smuggling. Based on this alleged evidence of bulk cash smuggling, the trial court further concluded that the seizure of Hodges' $60,990 was lawful.

[20] First, although the search warrant authorized law enforcement officers to search for the proceeds of drug trafficking, money laundering, and bulk cash smuggling, the State's motion to transfer the seized money to the United States alleged only that the money had been confiscated as proceeds of narcotics trafficking and money laundering. The State's motion no longer mentioned bulk cash smuggling.

[21] We further note that Indiana statutes include neither the offense nor the definition of bulk cash smuggling. Rather, bulk cash smuggling is a federal offense, which is codified at 31 UNITED STATES CODE § 5332. Specifically, this statute provides that it is unlawful to knowingly conceal more than $10,000 in currency or other monetary instruments on a person or in a container and to transport or attempt to transport this currency across the border of the United States with the intent to avoid currency reporting requirements.

[22] Even if we were to apply this definition of bulk cash smuggling to the facts of this case, we find absolutely no evidence that Hodges attempted to transport his money across the United States' border with the intent to avoid currency reporting requirements. Rather, the parties agree that Hodges attempted to ship the currency from Illinois to California. Based on these facts, no reasonable

person could conclude that the currency discovered in the parcel was the proceeds of bulk cash smuggling.

[23] With regard to the State's argument that the currency in the parcel was the proceeds of drug trafficking, we note that the facts before us are analogous to those in *Bowman*. Specifically, without more, Hodges' method of payment, his use of extra tape, his use of a new shipping company box, and his failure to require a delivery signature are not indicative of drug trafficking. *See id.* We agree with *Bowman* that many parcels meeting these criteria and having nothing to do with drug trafficking are shipped in this country every day. *See id.* We further agree with *Bowman* that the fact that a K9 alerts to a parcel, or even cash, means only that at some point, someone handling the parcels and the cash transferred the odor of controlled substances to them. *See id.* Based on these facts, no reasonable person could conclude that currency discovered in the parcels was the proceeds of drug trafficking. *See id.*

[24] Lastly, the State also argues that the currency was evidence of money laundering. INDIANA CODE § 35-45-15-4 provides that money laundering is the knowing or intentional transfer of the proceeds of criminal activity. Where we have already determined that there is no evidence that Hodges' currency was the proceeds of criminal activity, no reasonable person could conclude that the currency discovered in the parcel was the proceeds of money laundering.

[25] As we explained in *Bowman*, 81 N.E.3d at 1131, where no evidence of unlawful activity was found in the parcel, and there has been no allegation that Hodges

has been charged with any state or federal offenses in connection with the parcel, no reasonable person would conclude that the currency discovered in the parcel was the proceeds of bulk cash smuggling, drug trafficking, or money laundering. The seizure of the currency was therefore unlawful, and the trial court's order granting the State's motion to turn the currency over to the United States was erroneous. *See id.* We therefore reverse and remand this case with instruction to the trial court to order the return of the currency to Hodges.

Reversed and remanded.

Vaidik, C.J., and Barnes, Sr.J., concur.