

FILED

Dec 16 2020, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bernadette A. Kovacs
Rahman Law Office
Ferdinand, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Nathan C. Albrecht,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 16, 2020

Court of Appeals Case No.
20A-CR-945

Appeal from the Dubois Circuit
Court

The Honorable Nathan A.
Verkamp, Judge

Trial Court Cause No.
19C01-1910-F5-1109

**Pyle, Judge.**

## Statement of the Case

[1] In this interlocutory appeal, Nathan Albrecht ("Albrecht") appeals the trial court's denial of his motion to suppress evidence, which led to the State filing ten counts of possession of child pornography against Albrecht. This case

involves five search warrants obtained by police during an investigation into allegations of child molesting by Albrecht. The second search warrant authorized the seizure and forensic search of a hard drive, which led to the discovery that the hard drive contained child pornography.

[2] On appeal, Albrecht challenges the second search warrant, alleging that it lacked probable cause and did not meet the particularity requirement under the Fourth Amendment, and he challenges the third, fourth, and fifth warrants under the fruit of the poisonous tree doctrine. Concluding that the issuing judge had a substantial basis for finding that probable cause existed for the second search warrant and that the second search warrant was particularized in terms of the items to be seized and in terms of the scope of the search to be performed, we affirm the trial court's denial of Albrecht's motion to suppress.

[3] We affirm.

## Issue

Whether the trial court abused its discretion by denying Albrecht's motion to suppress.

## Facts

[4] In August 2019, twelve-year-old R.R. ("R.R.") told authorities that twenty-seven-year-old Albrecht, who worked with R.R. as part of Mentors for Youth, had inappropriately touched R.R. during the prior six to nine months. On August 23, 2019, R.R. told a forensic interviewer that Albrecht had "placed his mouth on R.R.'s penis on multiple occasions while [R.R.] was at . . . Albrecht's

apartment in Ferdinand." (Tr. Vol. 2 at 5). R.R. also revealed that Albrecht's inappropriate actions had included Albrecht's penis. Specifically, R.R. explained that, "on more than one occasion[,]" Albrecht had taken a "clear" item and "slid[] it over [Albrecht's] penis" and that occasionally R.R. had used his hand to put the clear item on Albrecht's penis. (Tr. Vol. 2 at 5). Additionally, R.R., while making an up-and-down motion with his hand, explained that "white stuff would come out of [Albrecht's] penis, and the clear plastic thing would catch it." (Tr. Vol. 2 at 5). R.R. also disclosed that Albrecht had gotten these clear items from his bathroom. Deputy John Anderson ("Deputy Anderson") and Officer Eric Hopkins ("Officer Hopkins") spoke to Albrecht about the allegations, and Albrecht invoked his right to an attorney.

[5] Based on R.R.'s allegations, the police sought a search warrant during a telephonic hearing on August 23, 2019 around 1:00 p.m. Investigator Richard Chambers ("Investigator Chambers"), who had attended R.R.'s forensic interview, informed the trial court of allegations of child molesting and the facts as set forth above. Investigator Chambers sought a search warrant to obtain "[a] condom or packages of condoms or similar instrumentality believed to be located in the bathroom of the residence[.]" (Tr. Vol. 2 at 7). He also sought "to take photographs or video of the residence that was described by the State's witness" to compare it to R.R.'s description. (Tr. Vol. 2 at 7). Investigator Chambers read the text of the search warrant out loud over the phone to the trial court. At 1:09 p.m., the trial court found that there was probable cause for

the issuance of the search warrant and authorized Investigator Chambers to sign the warrant on the court's behalf. The warrant was issued under cause number 19C01-1908-MC-856 ("Search Warrant 856") and provided as follows:

> WHEREAS, there has been testimony given to me an affidavit that establishes probable cause,
>
> YOU ARE HEREBY COMMANDED in the name of the State of Indiana, with the necessary and proper assistance, to search an upstairs unit of a multi-family residence at 1705 Main Street, Ferdinand, Indiana, located on the west side of the street with three (3) Bedford stone pillars on the front porch and the numbers 1705 on it and the home has white vinyl siding with [a] black roof and the upstairs apartment on the 2nd floor northside of the building with [a] tan door which is half glass with [a] white blind in the door and a red painted wooden stairwell leading up to the apartment. To the right of the entrance door of the upstairs unit, a TV antenna is located with a security light above the door.
>
> A condom or packages of condoms or similar instrumentality believed to be located in the bathroom of the residence as well as to take photographs or video of the residence that was described by the State's witness.
>
> You are ordered to examine such property, or any part thereof, found on such search.

(App Vol. 2 at 17).

[6] Immediately thereafter, police officers, including Deputy Anderson, served Search Warrant 856 at Albrecht's residence. One of the officers found condoms in Albrecht's bathroom. While searching for the condoms, the officer also found a two-terabyte external hard drive, which was in a Ziploc bag and

"hidden behind" a "decorative" "wooden border" above the vanity. (Tr. Vol. 2 at 12). The hard drive was "within arm[']s length" of the condoms. (Tr. Vol. 2 at 12). When the police arrested Albrecht, he had a cell phone in his pocket.

[7] That same day, the police sought a second search warrant during another telephonic hearing. Deputy Anderson sought the search warrant to seize and search the hard drive found in Albrecht's bathroom and the cell phone in Albrecht's possession upon his arrest. The trial court took judicial notice of the hearing for Search Warrant 856 that had occurred two hours previously.

[8] During this second hearing, Deputy Anderson described where the officers had found the hard drive and gave the specific description of the hard drive, including brand, model number, pin number and serial number. Deputy Anderson confirmed that he sought to search the hard drive for "any potential evidence . . . that could be located related directly to this crime[.]" (Tr. Vol. 2 at 13). When discussing the request to search Albrecht's phone, Deputy Anderson gave the phone number of Albrecht's cell phone and stated that R.R.'s mother had found some texts from Albrecht and that they were from that same phone number. Deputy Anderson confirmed that he sought to search the phone because "the text message relate[d] directly to the date on which the alleged crimes would've occurred[.]" (Tr. Vol. 2 at 12). Deputy Anderson also stated that Officer Hopkins had contacted Albrecht earlier that day at that same phone number.

[9]     Deputy Anderson then began to read the text of the search warrant application out loud over the phone to the trial court.  The phone connection cut out as Deputy Anderson was reading the warrant, so the prosecutor, who had a copy of the search warrant, finished reading it into the court record.  At 3:27 p.m., the trial court found that there was probable cause for the issuance of the search warrant and authorized Deputy Anderson to sign the warrant on the court's behalf.  The warrant was issued under cause number 19C01-1908-MC-857 ("Search Warrant 857").

> WHEREAS, there has been testimony given to me an affidavit that establishes probable cause,
>
> YOU ARE HEREBY COMMANDED in the name of the State of Indiana, with the necessary and proper assistance, to search an upstairs unit of a multi-family residence at 1705 Main Street, Ferdinand, Indiana, located on the west side of the street with the following items which are may [sic] contain evidence of the crime of child molesting pursuant to [Search Warrant 856] issued under Cause No. 19C01-1908-MC-00856.
>
> An external hard drive, NEMKO-US, Seagate Model No. SRD00F1, PN Number 1K9AP-6-501, Serial NA7K1WKJ, TTB, backup plus portable drive located in a clear plastic Ziploc bag with a blue seal found in the bathroom, hidden above the vanity shelf behind a ledge, located during the search for condoms and found within close proximity to the condoms.
>
> Also, to seize and search a black ZTE TracFone located in possession of defendant Nathan Albrecht at the time of his arrest with a phone number of (317) [XXX-XXXX].
>
> This request for a warrant involves the potential seizure and review of digital media.  The analysis of computer and/or digital media is an exacting scientific procedure which is designed to

protect the integrity of the evidence and to recover digital information, to include hidden, erased, compressed, password-protected or encrypted files. The analysis of evidence from computer and digital systems commonly require the seizure of all computer-related items to be processed by a qualified computer expert in a laboratory or other controlled environment. The high volume of the contents and the potential intentional concealment of criminal activity through random ordering and deceptive file names may require the examination of all stored data. This process may take weeks to months depending on the volume of the data involved and the caseload of the computer expert.

Recognizing that specialized and highly technical equipment and software will be needed to conduct the analysis of the seized digital media, the media will be transferred to the Indiana State Police Cyber Crime Unit or other qualified laboratory with a request that a forensic examination be conducted in this matter. Additionally, under limited situations, assistance may be required by the receiving laboratory from other qualified laboratories.

USE OF UNSWORN PERSONNEL: Forensic analysis of any seized computer equipment pursuant to this search warrant may be conducted by employees of law enforcement agencies who are not sworn law enforcement personnel but are instead civilian employees.

You are ordered to examine such property, or any part thereof, found on such search.

(App. Vol. 2 at 18).

A few days later, on August 27, 2019, during an in-person hearing, Deputy Anderson sought a third search warrant for the search of Albrecht's apartment. Specifically, he sought to seize and search a computer that he had seen in Albrecht's bedroom and other electronic equipment that may have been used to

produce or view child pornography. Deputy Anderson stated that he sought the search warrant because he believed that there would be evidence relating to the crimes of child molesting, child exploitation, and possession of child pornography. Pursuant to Deputy Anderson's request, the trial court took judicial notice of the prior testimony and hearings involved with the issuance of Search Warrant 856 and Search Warrant 857. Deputy Anderson discussed the hard drive that had been seized pursuant to Search Warrant 857. He stated that the hard drive, which had been partially searched, contained "[i]n excess" of 100,000 images that would be considered child pornography and "thousands" of videos. (Tr. Vol. 2 at 21, 22). Additionally, Deputy Anderson informed the trial court that the hard drive contained images of the victim in the pending child molest case and that the images were of the child either clothed or wearing underwear. Deputy Anderson explained that Jasper Police Detective Martin Loya ("Detective Loya"), who was conducting the forensic search of the hard drive, had explained that the contents of the hard drive could only be viewed on a computer. Deputy Anderson stated that Detective Loya had also explained that searching Albrecht's computer would allow him to determine whether Albrecht had produced child pornography or had just viewed it.

[11] The prosecutor and Deputy Anderson then took time during the hearing "to make a record" about Search Warrant 856 and Search Warrant 857. (Tr. Vol. 2 at 23). The prosecutor pointed out that the testimony for Search Warrant 856 had "described" the crime of child molesting but had "not explicitly stated" it. (Tr. Vol. 2 at 24). Deputy Anderson confirmed that the probable cause that had

been established for Search Warrant 856 still existed at the time of the current hearing. The deputy asked the trial court to "correct the record" for Search Warrant 856 and Search Warrant 857 and to "take notice" that the "offense that justified" Search Warrant 856 was child molesting. (Tr. Vol. 2 at 24). Additionally, "[a]s a precaution to ensure the validity" of Search Warrant 856, Deputy Anderson asked the trial court to reissue a search warrant for the residence as covered in Search Warrant 856. (Tr. Vol. 2 at 24). Deputy Anderson then read the prepared search warrant into the record.

[12] The trial court responded that, based on the testimony for the first search warrant, Search Warrant 856, it was "very clear" to the Court that the crime that was being alleged and upon which Search Warrant 856 was being issued was the crime of child molesting by Albrecht who had been a mentor to the victim through Mentors for Youth. (Tr. Vol. 2 at 26). The trial court also stated that it was "clear" that the second search warrant, Search Warrant 857, which sought to do a forensic search of the hard drive, was "a continued search" and related to child molesting, child exploitation, or possession of child pornography "based on the fact that the external hard drive was secreted in the bathroom near where the condoms were located[,]" which "would give rise to believe" that Albrecht had either videotaped or take photographs "of the allege events." (Tr. Vol. 2 at 26).

[13] The trial court found that there was probable cause for the issuance of the third search warrant. This warrant was issued under cause number 19C01-1908-MC-886 ("Search Warrant 886") and provided as follows:

WHEREAS, there has been presented to me oral testimony, under oath.

YOU ARE HEREBY COMMANDED in the name of the State of Indiana, with the necessary and proper assistance in the daytime or in the nighttime, to enter into or upon the premises and places being:

An upstairs unit of a multi-family residence at 1705 Main Street, Ferdinand, Dubois County, State of Indiana, a two story, white siding residence with three (3) Bedford stone pillars on the front porch and the numbers 1705 on the top of the porch, with a black roof, with said residence being located on the west side of Main Street. The entrance to said apartment is at the top of a reddish-brown painted wooden stairwell leading to the 2nd floor on the northside of the residence, with the entrance being a tan door which is half glass with a white blind in the door. There is a TV antenna located to the right of the entrance door to the apartment, as well as a security light above the entranceway. Said apartment is currently occupied by Nathan C. Albrecht (DOB 7/20/1992).

And there search diligently for any evidence of violations of Child Molesting (a Level 1/2/3/4 felony) under I.C. 35-42-4-3, Child Exploitation (a Level 4/5 felony) under I.C. 35-42-4-4, and Possession of Child Pornography (a Level 5/6 felony) under I.C. 35-42-4-4. You are ordered to seize such property, or any part thereof, found on such search.

(App. Vol. 2 at 20).

[14] When officers served Search Warrant 886, they found and seized, among other items, a computer, an SD card, four DVDs, and two Zune audio/electronic devices. The computer and Zune devices were found in Albrecht's bedroom, while the SD card and four DVDs were found in a cardboard box near the front

door. That same day, the police sought a fourth and fifth search warrant to conduct a forensic search of those items. The fourth search warrant related to the computer, SD card, and four DVDs, while the fifth search warrant related to the Zune devices. These search warrant affidavits stated that there was probable cause to believe that evidence of the crimes of child molesting, child exploitation, and possession of child pornography may be found in a search of the above-listed items. The search warrant affidavits also requested the trial court to take judicial notice of the testimony that established probable cause for the first three search warrants, specifically Search Warrant 856, Search Warrant 857, and Search Warrant 886. The trial court found that there was probable cause for the fourth and fifth warrant requests and issued the fourth warrant under cause number 19C01-1908-MC-887 ("Search Warrant 887") and the fifth warrant under cause number 19C01-1908-MC-888 ("Search Warrant 888").

[15]     The State charged Albrecht with ten counts of Level 5 felony possession of child pornography. The ten counts alleged that Albrecht knowingly or intentionally possessed "a motion picture that depicts or describes sexual conduct by a child who appears to be less than eighteen (18) years of age and that lacks serious literary, artistic, political or scientific value and the child who is depicted or described is less than twelve" years of age. (App. Vol. 2 at 48-49). Additionally, some of the counts also alleged that the child in the video appeared to be in pain or forced to engage in the conduct or was involved in bestiality.

[16] On December 17, 2019, Albrecht filed a pro se motion to suppress evidence obtained from the hard drive. Albrecht argued that the seizure of the hard drive violated his Fourth Amendment right against unreasonable search and seizure. Specifically, Albrecht argued that "[t]he hard drive seized was not an item particularly described in the warrant it was collected under." (App. Vol. 2 at 66). He suggested that the hard drive had been seized under Search Warrant 856, which was the first warrant, and asserted that that search warrant had only listed condoms and not the hard drive.

[17] The trial court held a hearing on Albrecht's motion to suppress on January 3, 2020. Albrecht appeared pro se and did not call any witnesses. During the hearing, the State called Deputy Anderson, who testified that the hard drive had been seized pursuant to the second search warrant, Search Warrant 857. The trial court issued an order denying Albrecht's motion to suppress on January 10, 2020.

[18] On January 28, 2020, Albrecht filed a second motion to suppress, arguing that the second and third search warrants, Search Warrant 857 and Search Warrant 886, did not satisfy the particularity requirement of the Fourth Amendment and requesting that the evidence collected under those two warrants be suppressed and returned to him.[1] Albrecht argued that Search Warrant 857 failed to fulfill

---

[1] Albrecht did not specify the evidence he sought to suppress. Nevertheless, the evidence obtained under Search Warrant 857 included the hard drive and Albrecht's cell phone, while the evidence obtained under Search Warrant 886 included a computer, an SD card, four DVDs, and two Zune audio/electronic devices.

the particularity requirement because it did not set forth "what [wa]s being searched for from the contents of the devices listed [hard drive and cell phone]" and "what data of those devices [wa]s allowed to be searched." (App. Vol. 2 at 76). Additionally, Albrecht argued that the language of Search Warrant 886 did not meet particularity requirement of the Fourth Amendment because it allowed for a search related to the three listed crimes but did not set forth any guidelines on what could be taken. Albrecht also argued that the lack of particularity was not covered by the good faith exception and that Search Warrant 887, which related to Search Warrant 886, should be suppressed under the exclusionary rule.

[19] On February 13, 2020, Albrecht filed a supplemental brief, asserting that, for Search Warrant 857, he was challenging both the lack of probable cause and the lack of particularity. When arguing that Search Warrant 857 lacked the necessary probable cause, Albrecht challenged the facts that Deputy Anderson had provided regarding the location of the hidden hard drive in Albrecht's bathroom in relation to the condoms. Specifically, Albrecht argued that Deputy Anderson should have stated that the size of Albrecht's bathroom was small, making "most everything in the bathroom . . . within arm's length[,]" and that the deputy also should have stated that the condoms had been found in plain view on a low shelf of Albrecht's bathroom. (App. Vol. 2 at 83).

[20] In his supplemental brief, Albrecht also challenged whether sufficient facts had been asserted to show that the hard drive had a relational nexus to an alleged crime. Albrecht argued that Deputy Anderson should have provided specific

facts "stating any training or experience that would [have] le[]d him to believe evidence would be found" on the hard drive. (App. Vol. 2 at 83). Albrecht acknowledged that Search Warrant 857 provided that a search of the hard drive might contain evidence of the crime of child molesting but asserted that it should have specifically alleged that photographs, videos, audio files, or documents would be found. Additionally, Albrecht argued that if the trial court suppressed the evidence under Search Warrant 857, then it should also suppress the evidence obtained under Search Warrant 886, Search Warrant 887, and Search Warrant 888 under the fruit of the poisonous tree doctrine.[2]

[21] The trial court held a hearing on Albrecht's second motion to suppress on February 26, 2020. Albrecht appeared pro se and did not call any witnesses. During the hearing, Albrecht specifically stated that he had "no problem with th[e] initial warrant[,]" Search Warrant 856. (Tr. Vol. 2 at 59). Instead, the focus of Albrecht's argument during the hearing was on Search Warrant 857 and the hard drive. He asserted that Search Warrant 857 lacked probable cause because there was no statement of illegality attributed to the hard drive, which he asserted he had the legal right to possess. Albrecht also argued that, when the officer had requested Search Warrant 857, he did not allege that the hard drive was suspicious and did not establish a nexus between the hard drive and an alleged crime. As for Albrecht's particularity argument, he argued that

---

[2] Albrecht also argued that a search warrant under cause number 19C01-1908-F1-879 should be suppressed under the fruit of the poisonous tree doctrine.

Search Warrant 857 had no limitation as to what the police could look for on the hard drive and that it was an impermissible general search. Albrecht also argued that the warrant request should have specified what the police expected to find on the hard drive.

[22] The State argued that "this [wa]s a really textbook case" and that suppression of the evidence was not warranted. (Tr. Vol. 2 at 51). The State summarized the procedural facts involved in the officers obtaining the five search warrants that led to the child pornography charges being filed against Albrecht. The State pointed out that Search Warrant 857 referenced Search Warrant 856 that sought evidence relating to the child molesting allegation. The State contended that the hard drive was "suspicious" because it was "hidden and wrapped in plastic in a bathroom, which is . . . the last place anyone would put a piece of electronic equipment due to the moisture and the potential damage[.]" (Tr. Vol. 2 at 55). The State asserted that was a reasonable nexus between the hard drive and the crime because perpetrators in child molesting cases often video themselves committing sexual acts. The State further argued that the magistrate, "relying on his own common sense and understanding," was able to reasonably infer that the discovery of the hard drive in the bathroom where the condoms were found as part of a child molesting case may be related to the crime. (Tr. Vol. 2 at 61). The State argued that the trial court's issuance of Search Warrant 857 was proper and based on probable cause because it was "based on the evidence that had been found, based on the statement of the

child, [and] based on the type of crime that was being investigated." (Tr. Vol. 2 at 62).

[23] Additionally, the State argued that Albrecht misunderstood the particularity requirement because the police did not have to list exactly what they were seeking to find on the hard drive. The State pointed out that the police had stated that they were looking for evidence of child molesting, child exploitation, or child pornography and that because the evidence to be searched was a hard drive, it was clear that the police were looking for electronic data. Additionally, the State pointed out that the officers did not conduct an impermissible general search and that "[t]he officers then stayed within the constricts of the warrant they were granted and came back for an additional warrant when they found further contraband." (Tr. Vol. 2 at 62).

[24] At the end of the hearing, the trial court denied Albrecht's second motion to suppress ("February 2020 Order").[3] Albrecht then sought appointed counsel for the limited purpose of trying to file an interlocutory appeal. The trial court granted Albrecht's request and appointed interlocutory appellate counsel.

[25] On March 26, 2020, Albrecht filed a petition seeking to have the trial court certify its February 2020 Order and a motion to stay the proceedings. The trial court granted both requests. In April 2020, Albrecht sought permission to file a

---

[3] The trial court did not issue a separate written order.

permissive interlocutory appeal, and this Court granted his request. Albrecht now appeals the denial of his second motion to suppress.

# Decision

[26] Albrecht challenges the trial court's interlocutory order denying his second motion to suppress. As he did below, Albrecht's appellate argument focuses on Search Warrant 857 and the hard drive. Specifically, Albrecht argues that the trial court erred by denying his motion to suppress because Search Warrant 857 violated the Fourth Amendment by: (1) lacking probable cause; and (2) failing to meet the particularity requirement.[4] Albrecht also argues that, if probable cause was lacking for issuance of Search Warrant 857, this deficiency is not salvaged by the good faith exception. Additionally, Albrecht argues that if the hard drive obtained pursuant to Search Warrant 857 should have been suppressed, it would also require the exclusion of all subsequently obtained evidence resulting from Search Warrant 886, Search Warrant 887, and Search Warrant 888 under the fruit of the poisonous tree doctrine.[5] Because Albrecht's

---

[4] Albrecht also asserts that Search Warrant 857 violated Article 1, Section 11 of the Indiana Constitution. However, he has waived such argument because he did not raise that argument to the trial court when he presented his motion to suppress and does not provide a separate analysis on appeal. *See Lee v. State*, 973 N.E.2d 1207, 1209 (Ind. Ct. App. 2012) (explaining that "generally the failure to file a proper motion to dismiss raising a constitutional challenge waives the issue on appeal), *trans. denied*; *White v. State*, 772 N.E.2d 408, 411 (Ind. 2002) (holding that the defendant's claim of an alleged search and seizure violation under Article 1, Section 11 of the Indiana Constitution was waived when he failed to provide a separate analysis under that provision.

[5] Additionally, Albrecht seems to challenge Search Warrant 856, suggesting that Search Warrant 856 "had several defects." (Albrecht's Br. 19). Albrecht did not challenge the validity of Search Warrant 856 in his motion to suppress, and he specifically said during the hearing that he had "no problem with th[e] initial

arguments hinge on his challenge to Search Warrant 857, we will focus our review on that warrant.

[27] Our appellate review of a trial court's denial of a motion to suppress is similar to other sufficiency matters. *Mehring v. State*, 884 N.E.2d 371, 376 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. We will determine whether "substantial evidence of probative value exists to support the trial court's ruling." *Litchfield v. State,* 824 N.E.2d 356, 358 (Ind. 2005). We will not reweigh the evidence, and we will consider conflicting evidence most favorably to the trial court's ruling. *Id.*

[28] We first address Albrecht's probable cause challenge to Search Warrant 857. The Fourth Amendment to the United States Constitution requires search warrants to be based on probable cause. *Heuring v. State*, 140 N.E.3d 270, 274 (Ind. 2020).[6] "Our General Assembly has codified this constitutional requirement in Indiana Code section 35-33-5-2, which specifies the information that must be included in an affidavit supporting a search warrant." *Id.* (citing I.C. § 35-33-5-2)).[7] "Probable cause is a 'fluid concept incapable of

warrant[,]" Search Warrant 856. (Tr. Vol. 2 at 59). Accordingly, he has waived any appellate challenge to Search Warrant 856.

[6] Article 1, Section 11 of the Indiana Constitution also requires search warrants to be based on probable cause. *Heuring*, 140 N.E.3d at 274. We need not discuss that constitutional provisions because Albrecht did not raise a state constitutional challenge in his motion to suppress.

[7] INDIANA CODE 35-33-5-2 provides, in relevant part, that "no warrant for search . . . shall be issued until there is filed with the judge an affidavit:

    (1) particularly describing:

        (A) the house or place to be searched and the things to be searched for; or

precise definition . . . [and] is to be decided based on the facts of each case.'" *Carter v. State*, 105 N.E.3d 1121, 1127 (Ind. Ct. App. 2018) (quoting *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997)), *trans. denied*. "Probable cause is not a high bar, and [it] is cleared when the totality of the circumstances establishes a fair probability—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime." *Hodges v. State*, 125 N.E.3d 578, 581-82 (Ind. 2019) (internal quotation marks and citations omitted). "Significantly, probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Eaton v. State*, 889 N.E.2d 297, 299 (Ind. 2008) (internal quotation marks and citation omitted), *reh'g denied*, *cert. denied*.

[29]     "In deciding whether to issue a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular

---

(B) particularly describing the person to be arrested;

(2) alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that:

(A) the things sought are concealed there; or

(B) the person to be arrested committed the offense; and

(3) setting forth the facts known to the affiant through personal knowledge or based on hearsay, constituting the probable cause.

I.C. § 35-33-5-2(a). A search warrant may be issued upon an affidavit that meets the requirements of INDIANA CODE § 35-33-5-2 or upon a witness's sworn testimony without an affidavit, as set forth in INDIANA CODE § 35-33-5-8(a). A search warrant issued under INDIANA CODE § 35-33-5-8 must also provide the "same facts required" under INDIANA CODE § 35-33-5-2. I.C. § 35-33-5-8(a).

place.'" *State v. Spillers*, 847 N.E.2d 949, 952-53 (Ind. 2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Put differently, the central question in a probable cause determination is whether the affidavit presents facts, together with reasonable inferences, demonstrating a sufficient nexus between the suspected criminal activity and the specific place to be searched." *Carter*, 105 N.E.3d at 1128. *See also Heuring*, 140 N.E.3d at 274 (explaining that a search warrant affidavit "must link the object of the search with criminal activity").

[30] "When a magistrate concludes that an affidavit establishes probable cause, we accord that determination great deference." *Id.* On appellate review of an issuing magistrate's probable cause determination, our Court "must ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." *Eaton*, 889 N.E.2d at 299 (internal quotation marks and citation omitted). "A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause." *Spillers*, 847 N.E.2d at 953. "In determining whether an affidavit provided probable cause for the issuance of a search warrant, doubtful cases are to be resolved in favor of upholding the warrant." *Mehring*, 884 N.E.2d at 377.

[31] Albrecht argues that the trial court erred by finding that there was probable cause for the issuance of Search Warrant 857. Specifically, he asserts that Deputy Anderson did not establish a substantial factual basis upon which the trial court could have determined that the hard drive in Search Warrant 857

would contain evidence of or was linked to a crime. He contends that "[d]espite the deferential standard given . . . to a magistrate's probable cause finding, the record in this matter does not support a finding that there was a substantial basis for the trial court's finding of probable cause or that reasonable inferences drawn from the totality of the evidence support the finding." (Albrecht's Br. 21) (internal quotation marks and citation omitted).

[32] The State argues that Search Warrant 857 was supported by probable cause and asserts that "[b]ased on the evidence elicited at the hearings on Search Warrant 856 and 857, police had probable cause to believe that the external hard drive found hidden in the bathroom in Albrecht's apartment was linked to the allegations of child molesting raised during R.R.'s forensic interview." (State's Br. 14). We agree with the State.

[33] Here, the police sought the first search warrant, Search Warrant 856, to search Albrecht's residence for condoms based on information from the victim, R.R., who had alleged that Albrecht had molested him multiple times at Albrecht's apartment. Specifically, during a telephonic probable cause hearing, Investigator Chambers informed the trial court of the various allegations that R.R. had disclosed during a forensic interview. These allegations included Albrecht placing his mouth on R.R.'s penis and Albrecht forcing R.R. to place a condom on Albrecht's penis and to rub his penis until he ejaculated. Investigator Chambers told the trial court that, according to R.R., the condoms that Albrecht had used during the alleged crime were located in Albrecht's bathroom.

[34] When the officers executed Search Warrant 856, they found condoms in Albrecht's bathroom, and, within arm's reach of the condoms, they found a hard drive that was wrapped in a plastic bag and hidden in the bathroom. Deputy Anderson then contacted the trial court and requested the second warrant, Search Warrant 857, to seize the hard drive and conduct a forensic examination of it because it "may [have] contain[ed] evidence of the crime of child molesting pursuant to [Search Warrant 856]." (App. Vol. 2 at 18). The warrant request for Search Warrant 857 referenced Search Warrant 856, and the trial court took judicial notice of the testimony and information from Search Warrant 856.

[35] Giving deference to the issuing magistrate's determination and considering the totality of the circumstances—including the testimony and information set forth during the hearings for Search Warrant 856 and Search Warrant 857; the nature of the crime being investigated; the proximity of the hard drive to other evidence relating to the crime; the clandestine storage location of the hard drive; the nature of the hard drive and the reasonable inference that a bathroom is not where one usually stores such an item; and the normal and common sense inferences that perpetrators in child molest cases often photograph or video themselves committing sexual acts—we conclude that the issuing judge had a substantial basis for concluding that probable cause existed for the issuance of Search Warrant 857 and that there was a fair probability that evidence of a crime may be present on the hard drive. In other words, the totality of these circumstances, along with reasonable inferences, demonstrated a sufficient

nexus between the suspected criminal activity and the hard drive that the police sought to search. Accordingly, the trial court did not err when it denied Albrecht's motion to suppress based on his probable cause challenge.[8]

[36] Next, we turn to Albrecht's challenge to the particularity of Search Warrant 857. Our Court has explained the particularity requirement as follows:

> The Fourth Amendment to the United States Constitution forbids general search warrants. A warrant must describe the place to be searched and the items to be searched for. Although the warrant must describe with some specificity where officers are to search and what they are to seize, there is no requirement that there be an exact description. Nonetheless, the warrant must be specific enough so that officers can, with reasonable effort, ascertain the place to be searched and the items to be seized. This requirement prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. Ultimately, the description in a search warrant should be as particular as circumstances permit. Moreover, to satisfy the particularity requirement, it is permissible if a warrant incorporates by reference certain supporting documents—such as the probable cause affidavit—that

---

[8] Moreover, we note that there is significant empirical data, including law reviews and psychological journals, linking sex crimes such as child molesting to the use of pornography. Indeed, this research serves as the basis for the terms of probation for sex offenders. Additionally, courts regularly limit or ban access to the internet, social media, and other forms of technology because social science research has demonstrated a link between sex offenders and pornography. *See* https://smart.ojp.gov/somapi/chapter-2-etiology-adult-sexual-offending#mult_theo_offe_beha. Because of this demonstrated link, it was not error for the trial court to reason that the detailed allegations from the hearing on Search Warrant 856 and the additional facts provided in the hearing on Search Warrant 857 made it likely that the hard drive concealed in the bathroom might contain incriminating pictures or other evidence of a crime such as child pornography.

collectively serve to identify the scope of items that could properly be seized.

*Price v. State*, 119 N.E.3d 212, 224 (Ind. Ct. App. 2019) (cleaned up), *trans. denied*.

[37] Albrecht argues that Search Warrant 857 did not meet the particularity requirement because it did "not contain language specifying what type of content and data" that the police could search within Albrecht's hard drive and cell phone. (Albrecht's Br. 25). On the other hand, the State argues that Search Warrant 857 was particularized with respect to the evidence to be seized and that "[t]he warrant [Search Warrant 857] was also tailored to allow officers to search only Albrecht's hard drive and his cell phone for digital media related to the crime of child molesting." (State's Br. 14). We agree with the State.

[38] Our review of the record reveals that Search Warrant 857 was not an impermissible general warrant as it was particularized in terms of the items to be seized and in terms of the scope of the search to be performed. Search Warrant 857 specified that the officers sought to seize and search Albrecht's hard drive and cell phone, "which . . . may contain evidence of the crime of child molesting pursuant to [Search Warrant 856] issued under Cause Number 19C01-1908-MC-00856." (Tr. Vol. 2 at 13). The warrant specified that the police sought to seize the following items:

> An external hard drive, NEMKO-US, Seagate Model No. SRD00F1, PN Number 1K9AP-6-501, Serial NA7K1WKJ, TTB, backup plus portable drive located in a clear plastic Ziploc bag

with a blue seal found in the bathroom, hidden above the vanity shelf behind a ledge, located during the search for condoms and found within close proximity to the condoms.

Also, to seize and search a black ZTE TracFone located in possession of defendant Nathan Albrecht at the time of his arrest with a phone number of (317) [XXX-XXXX].

(App. Vol. 2 at 18). In regard to what was to be searched, the warrant set forth that the police sought "potential seizure and review of digital media" of the devices. (App. Vol. 2 at 18). Search Warrant 857 also explained that the analysis of digital media was "an exacting scientific procedure" and would include "hidden, erased, compressed, password-protected or encrypted files." (App. Vol. 2 at 18). Additionally, the warrant specified that the "analysis of evidence from computer and digital systems commonly require the seizure of all computer-related items to be processed by a qualified computer expert in a laboratory" and that "potential intentional concealment of criminal activity through random ordering and deceptive file names may require the examination of all stored data." (App. Vol. 2 at 18).

[39]     Our Court has explained that a government's search of an electronic device is "[l]ike looking through drawers in a home or office file cabinet for specific files or letters that are relevant to the investigation" and that "a great deal of other information [will] . . have been sifted through [the electronic device] to find the relevant information." *Price*, 119 N.E.3d at 226 (citing *Carter*, 105 N.E.3d at 1130). Because the search of the items listed in Search Warrant 857 were electronic devices, the description of the items and the description of what was

to be seized was sufficiently particularized as the circumstances permitted. *See Price*, 119 N.E.3d at 224. Because Search Warrant 857 met the particularity requirement, the trial court did not err by denying Albrecht's motion to suppress based on this challenge.[9]

[40] Affirmed.

Kirsch, J., and Tavitas, J., concur.

---

[9] Because we conclude that Search Warrant 857 was supported by sufficient probable cause and met the particularity requirement, Albrecht's secondary arguments regarding the good faith exception and the exclusionary rule are moot and will not be addressed.