


FILED

Jun 27 2019, 10:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 19S-MI-117

## Michael Hodges,
*Appellant (Defendant)*

–v–

## State of Indiana,
*Appellee (Plaintiff)*

Argued: April 11, 2019 | Decided: June 27, 2019

Appeal from the Marion Superior Court, No. 49D11-1711-MI-40912
The Honorable John F. Hanley, Judge
The Honorable Ian Stewart, Commissioner

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-MI-78

**Opinion by Chief Justice Rush**

Justices David, Massa, Slaughter, and Goff concur.

**Rush, Chief Justice.**

Today we address a narrow question: did probable cause support the seizure of property that a court later ordered state police officers to turn over to federal authorities? While we answer this question affirmatively, we cannot—and do not—speculate about whether civil forfeiture of the property would be appropriate.

Here, a shipped box raised the suspicion of an interdiction officer: it displayed hallmarks of parcels containing drugs and drug money, and the officer's canine partner indicated the package bore the scent of narcotics. The officer successfully sought a warrant authorizing a search of the package and seizure of, among other items, proceeds of drug trafficking.

When officers opened the box, they found U.S. currency wrapped in multiple layers of sealed packaging. After a canine alerted that the money itself—not just the packaging—contained the odor of narcotics, officers seized the cash and obtained a court order to turn it over to federal authorities.

Michael Hodges, the person who shipped the parcel, argues that the seizure was unlawful because it exceeded the warrant's scope—making the turnover of the cash improper. We disagree. The totality of the circumstances established the necessary probable cause to believe the money was proceeds of drug trafficking.

Because the seizure was lawful, we affirm the turnover order.

## Facts and Procedural History

In October 2017, Detective Brian Thorla and his canine partner, K9 Hogan, were conducting parcel investigations at an Indianapolis FedEx shipping facility. They had been doing these investigations together for more than two years, though each of them had prior experience. Detective Thorla had been working as a law-enforcement officer since 2004 and as a controlled-substance-detection K9 handler since 2014. And K9 Hogan had over five years of service in narcotic detection.

The two had a routine. As parcels were sorted on belts and diverters, the detective watched for packages with characteristics common to parcels containing controlled substances or money involved in drug trafficking. Those characteristics included shipment to or from a "source" state; use of a common name, like Smith, Brown, or Johnson; use of a new box from the shipping company; heavy tape; cash payment for shipping; priority overnight shipping; and not requiring a signature upon delivery.

Packages with a suspicious set of features would be removed from the sorting line and placed on an open platform. K9 Hogan would then examine each of the selected packages. If the dog indicated that a package had a narcotic odor, the package would be taken to another area, where it would be placed with similarly sized parcels. K9 Hogan would then conduct a second examination. If he again indicated a narcotic odor on a package, that parcel would be set aside in a secured location, and Detective Thorla would seek a warrant to search it.

The pair followed this routine on October 26, 2017. Detective Thorla spotted a package with a suspicious combination of characteristics. It had been shipped to the "source" state of California; it was addressed from Michael Hodges to Christopher Smith; it was a new FedEx box, sealed with more tape than necessary; the shipment appeared to have been paid by cash; it was shipped priority overnight; and it required no signature upon delivery.

The detective removed the parcel from the sorting line and placed it with other packages for K9 Hogan to examine. When K9 Hogan examined each of them, he indicated that the Hodges–Smith parcel had a narcotic odor. Detective Thorla then took the parcel to another area and placed it with similarly sized packages. K9 Hogan examined that group of packages and again indicated the Hodges–Smith parcel had a narcotic odor. So Detective Thorla sought a warrant to search the package.

A judge issued a warrant to search the package for "controlled substances . . . , records of drug trafficking and proceeds of drug trafficking, . . . involving the proactive attempts of concealing currency as listed in the affidavit . . . ." It also ordered the police "to seize such property, or any part thereof, found on such search."

Executing the warrant, Detective Thorla opened and searched the package. Inside he found multiple layers of nested, sealed FedEx bags. Inside those "several padded packs" was another container: a "heat and vacuum sealed" plastic one of the sort often used to conceal odor. And inside that plastic container were stacks of U.S. currency, rubber banded in small denominations—mostly twenty-dollar bills—totaling $60,990.00. The parcel included no paperwork inside.

The police separated some of the currency from its packaging and hid it in a clean room. Next, they brought in K9 Hogan, who alerted to the cash, indicating its narcotic odor.

The police then seized the currency, and the State filed a motion to transfer it to federal authorities. After a hearing, the trial court granted the motion but stayed the turnover for any appeal. Hodges appealed the turnover decision, and a panel of the Court of Appeals reversed, concluding the seizure was unlawful. *Hodges v. State*, 114 N.E.3d 525, 531 (Ind. Ct. App. 2018).

The State petitioned for transfer. We granted the petition, vacating the Court of Appeals decision. Ind. Appellate Rule 58(A).

## Standard of Review

The propriety of the turnover order depends on whether the seizure was supported by probable cause to believe the cash was proceeds of drug trafficking, Ind. Code § 35-48-4-1 (2018).[1] This is a question of law that we review de novo. *See Membres v. State*, 889 N.E.2d 265, 268 (Ind. 2008). But we defer to the trial court's findings of fact unless they are clearly

---

[1] The warrant also mentioned money laundering and bulk cash smuggling. But we do not decide whether the seizure may have been lawful based on probable cause to believe the cash was evidence of money laundering, Ind. Code § 35-45-15-5, or bulk cash smuggling, which the Indiana Code does not define. Since we hold that Detective Thorla had probable cause to believe the cash was proceeds of narcotics trafficking, we need not determine whether the seizure was lawful for another reason. *See generally id.* § 34-24-1-1(2) (permitting seizure of money "used to commit . . . an offense under IC 35-47 . . . or commonly used as consideration for a violation of IC 35-48-4"); *id.* § 35-33-5-5(j) (requiring a court to grant a prosecutor's motion to transfer property seized under I.C. 34-24-1).

erroneous, and we consider conflicting evidence in the light most favorable to the trial court's ruling. *Id.*

# Discussion and Decision

Multiple statutes govern the turnover of property from state to federal authorities. First, Indiana Code section 34-24-1-1 permits seizure of property, including money, that meets certain criteria. Next, under Section 35-33-5-5(j), a prosecuting attorney may move to transfer the seized property to federal authorities, and the reviewing court "shall order" turnover of the property (if it was properly seized) for disposition under federal statutes and regulations.

Hodges does not dispute that probable cause supported the warrant to **search** the package. He argues only that the **seizure** exceeded the warrant's scope and was thus unlawful.

The State disagrees, maintaining that the totality of the circumstances established the necessary probable cause to seize the cash.

We agree with the State: the seizure was properly supported by probable cause to believe the cash was proceeds of drug trafficking. The seizure was therefore lawful and the turnover proper.

## I. Probable cause requires only a fair probability of criminality based on the totality of the circumstances.

Probable cause is "not a high bar," *Kaley v. United States*, 571 U.S. 320, 338 (2014), and is cleared when the totality of the circumstances establishes "a fair probability"—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime, *Illinois v. Gates*, 462 U.S. 213, 235, 238, 243 n.13 (1983). *See McGrath v. State*, 95 N.E.3d 522, 528 (Ind. 2018). Accordingly, probable cause does not establish guilt. In fact, innocent activity will often supply a basis for showing probable cause. *Gates*, 462 U.S. at 243 n.13; *McGrath*, 95 N.E.3d at 529.

The probable-cause standard is also "a fluid concept." *Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003) (quoting *Gates*, 462 U.S. at 232). It is "not readily, or even usefully, reduced to a neat set of legal rules," and it cannot be quantified into percentages. *Id.* at 371 (quoting *Gates*, 462 U.S. at 232). This is because probable cause "turn[s] on the assessment of probabilities in particular factual contexts," and it depends on the totality of the circumstances, viewed as a whole. *Id.* (quoting *Gates*, 462 U.S. at 232); *see District of Columbia v. Wesby*, 138 S. Ct. 577, 588 (2018) (rejecting an "excessively technical dissection" of the factors supporting probable cause, and recognizing that the totality of the circumstances requires courts to consider "the whole picture," which is often greater than the sum of its parts (first quoting *Gates*, 462 U.S. at 234; then quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981))).

When reviewing for probable cause, we do not focus on *post hoc* explanations for the circumstances. *See McGrath*, 95 N.E.3d at 528. Rather, we assess "the degree of suspicion that attaches to particular types of noncriminal acts." *Gates*, 462 U.S. at 243 n.13; *see McGrath*, 95 N.E.3d at 528. And we view the circumstances from the standpoint of an objectively reasonable police officer, *Pringle*, 540 U.S. at 371 (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)); *McGrath*, 95 N.E.3d at 529, keeping in mind that both inferences based on the officer's own experience and "common-sense conclusions about human behavior" may affect whether the officer had probable cause, *Wesby*, 138 S. Ct. at 587 (quoting *Gates*, 462 U.S. at 231); *see Ornelas*, 517 U.S. at 699–700.

With this guidance in hand, we now turn to whether Detective Thorla had the requisite probable cause to seize the cash found in the parcel.

## II. The totality of the circumstances supplied the detective with probable cause to seize.

The seizure was lawful if Detective Thorla had probable cause to believe the cash was proceeds of drug trafficking. From the standpoint of an objectively reasonable officer in the detective's position before the

seizure, the circumstances—taken altogether—supplied a basis for the necessary probable cause to seize the cash.

Detective Thorla's training and experience, both with drug-sniffing dog alerts on money and with detecting parcels containing controlled substances, informed his view of the circumstances.

Specifically, he understood that when a drug-sniffing dog alerts on money, it indicates that just before packaging, the cash was in close proximity to a significant amount of controlled substances and that the alert is not the result of innocent environmental contamination of the money. He also knew that K9 Hogan had been certified, yearly, as a narcotic-detection K9 and had been working in narcotic detection for over five years. The dog was trained to detect cocaine, heroin, methamphetamine, marijuana, MDMA, and derivatives, and was trained to alert to currency only when it is sufficiently contaminated—that is, when the money meets "the threshold of contamination that results from drug trafficking."

Detective Thorla had also learned, through training and experience, the common practices of individuals involved in trafficking controlled substances through the mail. With this knowledge, he recognized that the Hodges–Smith package bore many characteristics common to parcels containing controlled substances or currency contaminated above the dog-alert threshold.

In particular, the package had a combination of features consistent with attempts to conceal narcotic odors and to remain anonymous. The box was a new FedEx one, generally uncommon and most often used to mail items person-to-person rather than from a company sender. The packaging label lacked information that is included when shipment is paid by credit card or other accounts, indicating the shipment had been paid in cash. The box was shipped priority overnight and required no signature upon arrival, meaning it would simply be dropped off at the addressed location. It was addressed to an individual, Christopher Smith, in a source state. And it had more tape than necessary.

That set of characteristics, plus K9 Hogan's two drug-odor alerts, established probable cause for a warrant to search the package. Hodges does not dispute this. He maintains, however, that after searching the package, Detective Thorla lacked probable cause to believe the currency was proceeds of drug trafficking.

We disagree. The detective's discoveries after opening the box—combined with the circumstances that led to the package's search—established probable cause for the cash's seizure.

The multiple layers of sealed packaging, including a vacuum-sealed plastic container, signaled attempts to conceal narcotic odors. The large amount of cash, rubber banded into stacks of small bills that were mostly twenties, was consistent with stashes of currency traded in drug transactions. The $60,990.00 was to be left at the Smith address in the source state of California without signature confirmation of delivery. The package contained no paperwork documenting a legitimate transaction, only cash. And after separating some of the cash from its packaging and hiding it in a clean room, K9 Hogan alerted to the money, indicating that it met the threshold level of narcotic contamination for an alert.

Might each of these circumstances be the result of innocent behavior? Yes. It may well be that the cash is not proceeds of drug trafficking. It may be as Hodges asserts—that he mailed the $60,990.00 to a World Series ticket holder in a lawful exchange for expensive tickets.

But the existence of a *post hoc* innocent explanation does not preclude probable cause from forming. Here, the combination of circumstances gave Detective Thorla reason to believe that the cash was proceeds of drug trafficking. That is enough to meet the probable-cause standard, making the seizure lawful and the turnover proper.[2]

This does not mean, however, that the cash will be forfeited. Once the money is turned over, the government may either return the property or

___

[2] Hodges relies heavily on *Bowman v. State*, 81 N.E.3d 1127 (Ind. Ct. App.), *modified on denial of reh'g* (Ind. Ct. App. 2017), *trans. denied sub nom. Murphy v. State*, 96 N.E.3d 578 (Ind. 2018) (table), *cert. denied*, 139 S. Ct. 68 (2018). To the extent *Bowman* conflicts with our decision here, we disapprove it.

seek forfeiture. If it seeks forfeiture, the court overseeing that proceeding may assess any innocent explanations for the circumstances and determine who is entitled to the property. We decide only that the turnover from state to federal authorities is proper.

## Conclusion

Probable cause is not a determination of guilt but allows for additional investigation and proceedings. Here, all the circumstances—taken as a whole and viewed from the perspective of an objectively reasonable officer in Detective Thorla's position—supplied a basis for probable cause to believe the cash was proceeds of drug trafficking.

The seizure was thus lawful, and we affirm the trial court's order transferring the property to the federal government.

David, Massa, Slaughter, and Goff, JJ., concur.

ATTORNEY FOR APPELLANT
Matthew S. Abels
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General of Indiana

Stephen R. Creason
Chief Counsel

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana