## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 24 2020, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan L. Cook
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Michael Krulewitch, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 24, 2020 <br><br> Court of Appeals Case No. 20A-MI-823 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Carol J. Orbison, Senior Judge <br><br> Trial Court Cause No. 49D10-2001-MI-2431 |

**Baker, Senior Judge.**

[1] Michael Krulewitch appeals the trial court's order finding that the State had probable cause to seize currency found in a safety deposit box and turn that currency over to the federal government. Krulewitch argues that the State did not have probable cause to seize the funds. Finding that probable cause existed, we affirm and remand for further proceedings.

## Facts

[2] In July 2019, law enforcement discovered large quantities of marijuana and products containing THC in a residence. The suspect told Plainfield Detective Corporal Brian Stewart that he got the contraband from "Hot Dog" and been getting those products from Hot Dog for about a year. The suspect allowed Detective Stewart to examine his cell phone records to obtain Hot Dog's cell phone number and review conversations between the two men. Eventually, this information led police to Krulewitch.

[3] In September 2019, law enforcement began surveilling Krulewitch and investigating his financial statements to determine whether he had a source of legitimate income. Detective Stewart learned that Krulewitch had multiple bank accounts and safe deposit boxes with Indiana Members Credit Union.

[4] In 2016, Krulewitch applied for a bank loan and stated that his monthly income was $1,000; in 2018, he applied for another loan and stated that his monthly income was $4,166.67. Krulewitch was listed as the owner of Lunch Box Catering, which reported the following sales:

- $0 in 2014;

- $0 in 2015;
- $17,211 in 2016;
- $18,220 in 2017; and
- $19,422 in 2018.

The State also examined five years of Krulewitch's individual tax returns, on which he reported the following income:

- $19,564 in 2014;
- $18,913 in 2015;
- $19,735 in 2016;
- $29,411 in 2017; and
- no tax return filed in 2018.

Detective Stewart concluded, based on his professional training and experience, that this financial information indicated that Krulewitch had illegitimate income from illegal narcotics sales.

The detective obtained a search warrant for Krulewitch's residence, which was executed on January 21, 2020, by detectives with the Indianapolis Metropolitan Drug Task Force. Inside the home, the detectives found multiple bags of raw marijuana, four blocks of THC gummy candies waiting to be cut and cubed for packaging, sixteen sealed shipping boxes containing THC gummy cubes, thirteen open shipping boxes filled with THC gummy cubes, seventeen vacuum-sealed bags of marijuana, twenty-four jars of THC wax, and five boxes of THC vape cartridges. The detectives also found $846 in cash, and most of the cash was bound together with a gold clip.

[6] Following the search of the residence, Detective Stewart executed a search warrant at the Indiana Members Credit Union. Inside one of Krulewitch's safe deposit boxes was cash totaling $287,536. Most of the cash "was bundles of $100 bills that were rubber banded together in groups of 100 bills." Appellant's App. Vol. II p. 23. Some of the money was bound together with a gold clip like the one found in Krulewitch's residence. The State charged Krulewitch with multiple crimes, including dealing in marijuana, fraud on a financial institution, failure to maintain tax records, and possession of marijuana.

[7] On January 27, 2020, the State filed a complaint for forfeiture, naming Krulewitch as a defendant. It also filed a motion for a probable cause finding for forfeiture purposes and a motion to transfer seized property to the United States. The trial court held a probable cause hearing on March 9, 2020, and determined that law enforcement had probable cause to investigate Krulewitch's financial records, including the safe deposit boxes.[1] Krulewitch now appeals.

---

[1] There is no evidence in the record on appeal, including the Chronological Case Summary, that the trial court granted or otherwise ruled on the State's motion to transfer the money to the United States. We will infer from the fact that the State does not raise the argument that the money has, indeed, been turned over and that the appeal is therefore ripe.

# Discussion and Decision

[8] Krulewitch argues that there was insufficient evidence showing that the currency was the proceeds of criminal activity, meaning that there was not probable cause to conclude that the cash was subject to seizure.

[9] The turnover statute provides as follows:

> Upon motion of the prosecuting attorney, the court shall order property seized under IC 34-24-1 transferred, subject to the perfected liens or other security interests of any person in the property, to the appropriate federal authority for disposition under 18 U.S.C. 981(e), 19 U.S.C. 1616a, or 21 U.S.C. 881(e) and any related regulations adopted by the United States Department of Justice.

I.C. § 35-33-5-5(j). Therefore, to be turned over to the federal government, the State must show that the property was properly seized pursuant to Indiana Code chapter 34-24-1—the forfeiture statutes.

[10] Relevant to this case is Indiana Code section 34-24-1-1(a)(2), which provides that money may be seized by the State if it was:

(A) furnished or intended to be furnished by any person in exchange for an act that is in violation of a criminal statute;

(B) used to facilitate any violation of a criminal statute; or

(C) traceable as proceeds of the violation of a criminal statute.

In other words, the General Assembly has reasonably decreed that for the State to seize cash and seek its forfeiture—or turnover—it must show a nexus between the cash and some sort of criminal activity.

[11] What we are tasked with determining here, therefore, is whether the cash was properly seized by the State. Put another way, we must determine whether the State had probable cause to believe the cash was linked to criminal activity. As our Supreme Court has explained, "[p]robable cause is not a high bar, and is cleared when the totality of the circumstances establishes a fair probability—not proof or a prima facie showing—of criminal activity, contraband, or evidence of a crime[.]" *Hodges v. State*, 125 N.E.3d 578, 581-82 (Ind. 2019) (internal quotation marks and citations omitted). Indeed, the *Hodges* Court explicitly noted that "innocent activity will often supply a basis for showing probable cause." *Id.* at 582. Probable cause is a fluid concept that turns on the particular factual context and "depends on the totality of the circumstances, viewed as a whole." *Id.* We must "view the circumstances from the standpoint of an objectively reasonable police officer" and "keep[] in mind that both inferences based on the officer's own experience and common-sense conclusions about human behavior may affect whether the officer had probable cause[.]" *Id.* (internal quotation marks and citations omitted).

[12] In this case, the totality of the circumstances supports the trial court's conclusion that there was probable cause to seize the cash. Specifically, in 2016, Krulewitch applied for a bank loan and stated that his monthly income was $1,000; in 2018, he applied for another loan and stated that his monthly

income was $4,166.67—a fourfold increase. Krulewitch was listed as the owner of Lunch Box Catering, which reported the following sales: $0 in 2014; $0 in 2015; $17,211 in 2016; $18,220 in 2017; and $19,422 in 2018—nothing approaching a fourfold increase. The State also examined five years of Krulewitch's individual tax returns, on which he reported the following income: $19,564 in 2014; $18,913 in 2015; $19,735 in 2016; $29,411 in 2017; and no tax return filed in 2018—again, nothing approaching a fourfold increase.

[13] Detective Stewart concluded, based on his professional training and experience, that this financial information indicated that Krulewitch had illegitimate income from illegal narcotics sales. When executing a search warrant at Krulewitch's home, law enforcement officials found multiple bags of raw marijuana, four blocks of THC gummy candies waiting to be cut and cubed for packaging, sixteen sealed shipping boxes containing THC gummy cubes, thirteen open shipping boxes filled with THC gummy cubes, seventeen vacuum-sealed bags of marijuana, twenty-four jars of THC wax, and five boxes of THC vape cartridges. The detectives also found $846 in cash, and most of the cash was bound together with a gold clip. Later, when the detectives searched Krulewitch's safe deposit boxes, they found cash totaling $287,536. Most of the cash "was bundles of $100 bills that were rubber banded together in groups of 100 bills." Appellant's App. Vol. II p. 23. Some of the money was bound together with a gold clip like the one found in Krulewitch's residence.

[14] Krulewitch points out, among other things, that no illegal contraband was found with the cash; no controlled buys directly linked the cash to drug

trafficking activity; only five years of his tax returns were analyzed; the cash was located in a third safe deposit box not described in Detective Stewart's probable cause affidavit; the cash was found with benign personal items such as savings bonds, a ring, and birth certificates; and the detectives did not determine whether Krulewitch had received any inheritances at any point in his life.[2] The defendant in *Hodges* made similar arguments, which our Supreme Court found unpersuasive:

> Might each of these circumstances be the result of innocent behavior? Yes. It may well be that the cash is not proceeds of drug trafficking. It may be as Hodges asserts—that he mailed the $60,990.00 to a World Series ticket holder in a lawful exchange for expensive tickets.

> But the existence of a *post hoc* innocent explanation does not preclude probable cause from forming. Here, the combination of circumstances gave [the detective] reason to believe that the cash was proceeds of drug trafficking. That is enough to meet the probable-cause standard, making the seizure lawful and the turnover proper.

*Hodges*, 125 N.E.3d at 583 (internal footnote omitted).

[15] When looking at the totality of the circumstances at the time the cash was seized, we can only conclude that those circumstances established a fair

---

[2] In his reply brief, Krulewitch directs our attention to proceedings that have occurred following the filing of this appeal. We decline to examine that portion of the record, though if we did so, it would not change the result. That a post hoc innocent explanation may exist does not preclude probable cause from forming—though it may, of course, ultimately affect the forfeiture proceedings, should they take place.

probability that the cash was linked to criminal activity. In other words, the trial court did not err by finding that the State had probable cause to seize the currency or by (presumably) ordering that currency turned over to the United States.

As the *Hodges* Court noted, this conclusion does not mean that the money is unquestionably lost to Krulewitch:

> This [finding of probable cause] does not mean, however, that the cash will be forfeited. Once the money is turned over, the government may either return the property or seek forfeiture. If it seeks forfeiture, the court overseeing that proceeding may assess any innocent explanations for the circumstances and determine who is entitled to the property. We decide only that the turnover from state to federal authorities is proper.

*Id.* at 584. Here, likewise, we find only that the seizure was lawful and the transfer to the federal government was proper.

The judgment of the trial court is affirmed and remanded for further proceedings.

Bailey, J., and Vaidik, J., concur.