

I N  T H E

# Court of Appeals of Indiana

Reginald D. Akins, Jr.,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Feb 06 2026, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

February 6, 2026

Court of Appeals Case No.
24A-CR-2140

Appeal from the Delaware Circuit Court

The Honorable Judi L. Calhoun, Judge

Trial Court Cause No.
18C01-2110-F2-35

**Opinion by Judge Weissmann**
Judges May and Foley concur.

**Weissmann, Judge.**

[1] While Reginald Akins Jr. was being arrested on outstanding warrants and for driving with a suspended license, a police narcotics-detection dog alerted to Akins's vehicle. A subsequent search uncovered methamphetamine, cocaine, heroin, and drug paraphernalia. Akins failed to appear for his jury trial but was tried and convicted in absentia of three drug-related offenses and for driving while suspended. He was also found to be a habitual offender.

[2] On appeal, Akins challenges the constitutionality of the search, arguing that Indiana's legalization of hemp—a cannabis product indistinguishable by scent from marijuana—undermines the value of a dog alert where the dog is trained to detect marijuana. Although hemp's legalization may reduce the evidentiary weight of such a dog alert, it does not render the alert meaningless. Akins has therefore failed to show that the search of his vehicle was unconstitutional.

[3] Akins also contends that the State committed prosecutorial misconduct by using its own prosecutor to identify him and his prior convictions during the habitual-offender proceeding. We agree that the prosecutor engaged in misconduct but find it did not rise to the level of fundamental error, which is required for Akins's unpreserved claim. We therefore affirm.[1]

---

[1] We conducted oral argument in this case on December 11, 2025, at Shakamak High School. We thank the school's administration and students for their generosity in hosting this argument. We also thank the parties' counsel for their participation and advocacy.

## Facts

[4] While on patrol on October 20, 2021, Muncie Police Officer Danielle Bradford observed Akins driving a silver Cadillac with someone in the front passenger seat. Officer Bradford knew Akins from prior police encounters and was aware that he had a suspended driver's license and outstanding felony warrants. She had also seen Akins's vehicle at a known drug house earlier that day. After confirming the suspension and warrants, Officer Bradford conducted a traffic stop of Akins's vehicle and ordered Akins to exit it. Akins complied and, while doing so, took off his jacket and placed it on the driver's seat. His passenger remained inside the car.

[5] Officer Bradford detained Akins and immediately deployed her narcotics-detection dog, Rasse, to conduct a free-air sniff of Akins's vehicle. Rasse is trained to detect marijuana, methamphetamine, cocaine, and heroin, and he indicates any of these odors with a single "general alert" by sitting and staring at the source. Tr. Vol. III, p. 193. During the free-air sniff of Akins's vehicle, Rasse sat at the passenger-side door. Officers then searched the car.

[6] Inside the jacket that Akins had placed on the driver's seat, officers recovered methamphetamine and crack cocaine. Additional cocaine, heroin, and drug paraphernalia were found elsewhere in the vehicle. Laboratory testing later confirmed the substances, and Akins admitted on the scene to possessing both "ice" (methamphetamine) and crack. State's Exh. 3 at 24:44. Officers separately searched a backpack belonging to Akins's passenger and discovered marijuana.

A jury convicted Akins of Level 4 felony possession of methamphetamine, Level 3 felony dealing in cocaine, Class A misdemeanor driving while suspended, and Class C misdemeanor possession of paraphernalia. He was acquitted of Level 4 felony dealing in a narcotic drug. After a separate proceeding, the jury also found Akins to be a habitual offender. He was ultimately sentenced to a total of 27 years imprisonment.

## Discussion and Decision

On appeal, Akins raises two claims: (1) that the search of his vehicle was unconstitutional; and (2) that the State committed prosecutorial misconduct during the habitual offender phase of his trial.

## I. Constitutionality of the Search

Akins contends that the warrantless search of his vehicle was unlawful because the general alert by Rasse, the narcotics dog, did not distinguish between legal hemp and illegal marijuana. He argues that, as a result, the alert did not provide probable cause for the search under the Fourth Amendment to the United States Constitution and did not render the search reasonable under Article 1, Section 11 of the Indiana Constitution. The constitutionality of a search raises a question of law, which we review de novo. *Thomas, v. State*, 81 N.E.3d 621, 624 (Ind. 2017).

Although the texts of the U.S. and Indiana Constitutions' search and seizure provisions are similar, "we interpret [them] separately and independently."

*Robinson v. State*, 5 N.E.3d 362, 368 (Ind. 2014). But first, we must consider the distinction between marijuana and hemp under Indiana law.

## A. Indiana's Legalization of Hemp

In 2019, Indiana amended its statutes to legalize hemp, which is defined as the parts of a cannabis plant containing no more than 0.3% delta-9-tetrahydrocannabinol (delta-9 THC). Cannabis exceeding that threshold remains "marijuana," a Schedule I controlled substance. Ind. Code §§ 15-15-13-6; 35-48-1-19. Thus, the distinction between the two substances hinges on delta-9 THC concentration. Legal hemp and illegal marijuana are indistinguishable by sight or smell. *See, e.g.*, *Fedij v. State*, 186 N.E.3d 696, 708-09 (Ind. Ct. App. 2022); *Moore v. State*, 211 N.E.3d 574, 579 (Ind. Ct. App. 2023).

Indiana courts have recognized the practical implications of this statutory change. In *Fedij*, this Court reversed a marijuana conviction where the State failed to prove the seized plant material exceeded the 0.3% delta-9 THC threshold. 186 N.E.3d at 709. And in *Moore*, this Court found that, despite the indistinguishable odors of hemp and marijuana, a police officer's detection of marijuana odor can still provide probable cause for a search after hemp's legalization. 211 N.E.3d at 581.

Though factually distinguishable from Akins's case, *Moore* is instructive. Like the police officer in that case, Rasse could not distinguish between the odors of

hemp and marijuana.[2] However, Rasse's general alert is different from the officer's direct detection of the odor because a dog cannot explain its response or the circumstances leading to its alert. In recognition of this difference, courts assess the reliability of a dog alert by looking to external factors such as the dog's training, certification, and field performance. *See Florida v. Harris*, 568 U.S. 237, 246-47 (2013).

[14] The legalization of hemp is relevant to our analysis of the constitutionality of a search, as an alert that once reliably signaled contraband may now also indicate lawful activity. However, as we explain below, the possibility that a canine alert could be triggered by legal hemp does not, by itself, negate probable cause under the Fourth Amendment or render the search unreasonable under the Indiana Constitution.

## B. United States Constitution

[15] The Fourth Amendment to the United States Constitution generally requires a warrant to search unless an exception applies. *See State v. Hobbs*, 933 N.E.2d 1281, 1284 (Ind. 2010). Under the "automobile exception," officers may search a vehicle without a warrant if they have probable cause to believe it contains evidence of a crime. *Id.* at 1285. Probable cause is a "practical and common-sensical standard" that asks whether, under the totality of the circumstances,

---

[2] Rasse was trained to alert on marijuana, but his handler, Officer Bradford, acknowledged that Rasse can also detect products that contain THC but not marijuana. Hemp falls into the latter category: not marijuana but containing THC.

there is a "fair probability" that contraband or evidence of a crime will be found. *McKinney v. State*, 212 N.E.3d 697, 702 (Ind. Ct. App. 2023) (quoting *Harris*, 568 U.S. at 243-44).

[16] A dog sniff conducted during a lawful traffic stop is not itself a search under the Fourth Amendment. *Hobbs*, 933 N.E.2d at 1286. A reliable canine alert, however, may establish probable cause to search a vehicle. *Id.* Whether an alert does so depends on the dog's reliability and the surrounding circumstances, not on rigid evidentiary requirements. *Harris*, 568 U.S. at 246-48.

[17] Akins argues that Rasse's alert could not establish probable cause because the dog could not distinguish between illegal marijuana and legal hemp. In his view, an alert "equally consistent with an illegal substance and a legal one" cannot establish probable cause because probable cause requires a showing that illegal activity is "more likely than not." Appellant's Br., p. 28; Reply Br., p. 5.

[18] That argument misapprehends the nature of probable cause, which is a "nontechnical conception" that deals in probabilities, not certainties. *Illinois v. Gates*, 462 U.S. 213, 231 (1983). Probable cause is "not reducible to precise definition or quantification." *Harris*, 568 U.S. at 243 (citation omitted). It "cannot be quantified into percentages." *Hodges v. State*, 125 N.E.3d 578, 582 (Ind. 2019). Probable cause exists when the known facts, viewed objectively, support a fair probability or substantial chance of criminal activity. *Moore*, 211 N.E.3d at 581. Therefore, Akins's attempt to apply numerical boundaries and

statistical calculations to this fluid-by-design concept improperly heightens the probable cause standard beyond what the Fourth Amendment demands.

[19] Akins next requests that we "reconsider" this Court's opinion in *Moore*, though he recognizes it has been affirmed by this Court several times. Appellant's Br., p. 29. We decline to do so.

[20] *Moore* held that the odor of marijuana can establish probable cause under the Fourth Amendment even after hemp's legalization. 211 N.E.3d at 579-81. This is consistent with longstanding precedent recognizing that even innocent activity may supply a basis for probable cause and that officers are not required to resolve ambiguity before acting. *See Gates*, 462 U.S. at 243 n.13; *Hodges*, 125 N.E.3d at 582-83. Probable cause frequently arises from facts consistent with both lawful and unlawful conduct. The Fourth Amendment tolerates that imprecision because it is a "practical and common-sensical standard" grounded in probabilities. *McKinney*, 212 N.E.3d at 702.

[21] As *Moore* recognized, many lawful items resemble illegal contraband: white powder, for example, could be cocaine or talcum powder. 211 N.E.3d at 582. "But that does not mean that an untested white powder can never indicate criminal activity." *Id.* Thus, the presence of items whose legality is ambiguous upon initial observation may still support probable cause when viewed in context. *Id.* (citing *Lamagna v. State*, 776 N.E.2d 955 (Ind. Ct. App. 2002) (probable cause for arrest existed where defendant was passed small plastic bag of white powder and threw it on floor when confronted by officers) and

*Strangeway v. State*, 720 N.E.2d 724 (Ind. Ct. App. 1999) (probable cause for search existed where officers observed white pills in small cellophane package)).

[22] The overarching principles set out in *Moore* are instructive here, even though we recognize the factual differences between that case and the one at hand: namely, that the detection here was made by a police dog rather than a human officer. However, that difference does not automatically compel a different result. Instead, we assess the reliability of Rasse's alert under the same totality-of-the-circumstances framework that governs other probable-cause determinations. This includes the scope of the dog's training and what the alert reasonably signaled at the time. *See Harris*, 568 U.S. at 248.

[23] Rasse was undisputedly trained and certified to detect multiple controlled substances: marijuana, methamphetamine, cocaine, and heroin. He could also detect substances that contain THC but not at high enough levels to constitute marijuana, which suggests he could alert to hemp. Rasse issued a general alert without identifying a specific substance. That this alert could have been triggered by hemp is just one lawful explanation among several other unlawful ones; i.e. the alert still could have indicated marijuana, methamphetamine, cocaine, and heroin. Though the legalization of hemp may weaken the inference drawn from a canine alert by introducing one legal substance into the mix of other illicit ones, it does not eliminate the alert's evidentiary value.

[24] Rasse's alert carried practical significance for police because it occurred against a backdrop of circumstances suggesting ongoing criminal activity. At the time

of the dog sniff, Officer Bradford knew that Akins was driving with a suspended license and had outstanding felony warrants. She had also observed his vehicle at a known drug house earlier that day and was familiar, through prior police contacts, with Akins's involvement in narcotic activity. This information provided context for evaluating the significance of Rasse's alert. *See id.* (probable cause turns on whether all facts surrounding dog's alert would lead reasonably prudent person to think contraband might be found).

[25] In sum, the fact that legal hemp shares characteristics with illegal marijuana does not categorically disable law enforcement from relying on trained canine alerts that could indicate either substance. Akins's proposed rule, under which probable cause disappears whenever lawful and unlawful explanations are plausible, finds no support in Fourth Amendment jurisprudence. Rasse's alert, considered alongside Officer Bradford's independent knowledge of the surrounding circumstances, supported a fair probability that contraband would be found in Akins's car. Akins therefore fails to demonstrate a violation of the Fourth Amendment.

## C. Indiana Constitution

[26] Article 1, Section 11 of the Indiana Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated." Whether a search complies with this provision turns on its reasonableness under the totality of the circumstances. *Hobbs*, 933 N.E.2d at 1287. Reasonableness is assessed by balancing three factors: (1) the degree of concern, suspicion, or knowledge that

a violation has occurred; (2) the degree of intrusion the search imposes on the citizen's ordinary activities; and (3) the extent of law-enforcement needs. *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).

[27] Akins claims the search of his vehicle was unreasonable under the totality of the circumstances. His challenge, however, centers on the degree of suspicion factor; he offers only cursory assertions regarding the other two.

### i. *Degree of Suspicion*

[28] The first *Litchfield* factor considers the degree of suspicion that criminal activity was afoot, based on all the information available to officers at the time of the search. *Hardin v. State*, 148 N.E.3d 932, 943 (Ind. 2020). Indiana courts have repeatedly recognized that a canine alert to narcotics can generate a high degree of suspicion that contraband is present. *Hobbs*, 933 N.E.2d at 1287; *McKinney*, 212 N.E.3d at 707.

[29] Akins argues that, following hemp's legalization, the degree of suspicion generated by a canine alert like Rasse's is "not significant" because it may be attributable to legal hemp rather than illegal marijuana. Appellant's Br., p. 34. But that framing misunderstands the impact of ambiguity on our analysis. Though the possibility of a lawful explanation may *reduce* the degree of suspicion, it does not necessarily eliminate it.

[30] In *Moore*, this Court rejected the notion that ambiguity alone negates suspicion, explaining that many substances—such as white powders or unidentified pills—may be lawful or unlawful depending on the circumstances, yet their detection

still reasonably indicates criminal activity. 211 N.E.3d at 582-83 (citing *Lamagna*, 776 N.E.2d 955, and *Strangeway*, 720 N.E.2d 724). Therefore, this Court held that the indistinguishable odors of marijuana and hemp can still generate a high degree of suspicion because marijuana remains illegal in Indiana; thus, its odor may reasonably indicate criminal activity. *Id.* at 582.

[31] Here, Rasse's alert must be assessed along with the surrounding circumstances. *See Hardin*, 148 N.E.3d at 943. Rasse's general alert suggested the possible presence of five substances, only one of which (hemp) is lawful. In that context, the alert provided a meaningful inference of criminal activity despite the possibility of that one innocent explanation. Additionally, Officer Bradford knew Akins was driving with a suspended license and had outstanding warrants. She also had observed his vehicle earlier that day at a known drug house and was familiar with Akins's prior involvement with narcotics.

[32] Viewed collectively, these facts supported a meaningful degree of suspicion that contraband would be found in the vehicle.

### ii. *Degree of Intrusion*

[33] The second *Litchfield* factor examines the degree of intrusion imposed by the method of search. Indiana courts have previously held that a canine sniff conducted during a traffic stop is a minimal intrusion. *See, e.g.*, *Austin v. State*, 997 N.E.2d 1027, 1036 (Ind. 2013); *McKinney*, 212 N.E.3d at 707. And where, as here, the defendant has already been detained or taken into custody, a dog sniff and subsequent vehicle search impose little additional disruption to the

defendant's ordinary activities. *See Hobbs*, 933 N.E.2d at 1287. We therefore conclude that the dog sniff of Akins's vehicle, conducted shortly after Akins was stopped and detained, imposed a minimal intrusion upon Akins.

### iii. Law Enforcement Needs

[34] The final *Litchfield* factor considers the extent of law-enforcement needs. Indiana courts have consistently recognized that the need to detect and interdict drug activity is substantial. *See McKinney*, 212 N.E.3d at 708; *Hardin*, 148 N.E.3d at 947. This need was present here, where officers were confronted with various circumstances, in addition to the alert, suggesting the potential presence of controlled substances. Moreover, officers had a need to search the vehicle immediately, as the vehicle was not being impounded and arrangements were being made for a friend of Akins's to drive it away from the scene.

### iv. Balancing of Factors

[35] Balancing the *Litchfield* factors, we conclude that the search of Akins's vehicle was reasonable under Article 1, Section 11 of the Indiana Constitution. Although one of the five substances that could have triggered the alert was legal, the alert also could have indicated any of four illicit substances. Therefore, that alert, in addition to the surrounding circumstances, reasonably suggested the possible presence of illegal substances. The degree of intrusion was minimal, and law-enforcement needs were substantial. Under the totality of the circumstances, the search was reasonable and Akins's claim under the Indiana Constitution fails.

## D. Summary

[36] Hemp's legalization may diminish, but does not eliminate, the evidentiary value of canine alerts by dogs like Rasse who can detect THC along with other substances. The possibility that these canine alerts could indicate legal hemp reduces but does not negate the inference of criminal activity. When assessing the constitutional validity of a search flowing from a canine who can alert to legal hemp, that alert remains relevant evidence, though the surrounding circumstances known to officers become particularly important.

[37] Here, Rasse was trained to detect four illegal substances in addition to hemp. This, coupled with Officer Bradford's knowledge of Akins's outstanding warrants, suspended license, prior narcotics involvement, and his vehicle's presence at a known drug house, supported the constitutionality of the search that followed Rasse's alert.

## II. Alleged Prosecutorial Misconduct

[38] During the habitual-offender phase of trial, the State called Lou Denney—one of its own deputy prosecutors—to testify that he had previously represented Akins as defense counsel in a 2001 case in which Akins was convicted of felony armed robbery. Akins claims the State's decision to call Denney as a witness constituted prosecutorial misconduct for several reasons. He argues that the State both induced Denney to breach attorney-client confidentiality and violated various ethical rules governing a prosecutor's special responsibilities. The most compelling of the alleged rules violations is that the prosecutor used

the prestige and authority of the office in a manner that risked influencing the jury's independent judgment.

[39] In evaluating claims of prosecutorial misconduct, this Court applies a two-step analysis. *Cooper v. State*, 854 N.E.2d 831, 835 (Ind. 2006). First, we consider whether the prosecutor engaged in misconduct. *Id.* Second, we assess whether, under all the circumstances of the trial, the misconduct placed the defendant in grave peril. *Id.* Peril is measured not by the impropriety of the misconduct but by the probable persuasive effect on the jury's decision. *Id.* Thus, the existence of prosecutorial misconduct does not, by itself, require reversal. *Bassett v. State*, 895 N.E.2d 1201, 1208 (Ind. 2008). And where, as here, a claim of prosecutorial misconduct is procedurally defaulted by the defendant's failure to object at trial, the defendant must also establish "the additional grounds for fundamental error." *Cooper*, 854 N.E.2d at 835.

## A. Misconduct

[40] To determine whether misconduct occurred, Indiana courts look to the caselaw and the Rules of Professional Conduct. *Bassett*, 895 N.E.2d at 1208. Indiana Professional Conduct Rule 3.8 imposes special obligations on prosecutors that go beyond those applicable to ordinary attorneys.

[41] "A prosecutor has the responsibility of a minister of justice and not simply that of an advocate." Prof. Cond. R. 3.8, cmt. 1. That role carries with it the "specific obligations to see that the defendant is accorded procedural justice and that guilt is decided upon the basis of sufficient evidence." *Id.* This heightened

duty reflects the prosecutor's unique authority and the influence the office carries with a jury and the public.

[42] Consistent with that responsibility, a prosecutor must not place the prestige or institutional authority of the State behind its evidence in a manner that risks supplanting the jury's independent evaluation of the evidence. Indiana courts have long recognized that prosecutorial misconduct may occur when the State invites the jury to rely on official endorsement or institutional credibility rather than on the evidence itself. *See Lainhart v. State*, 916 N.E.2d 924, 938 (Ind. Ct. App. 2009) (finding prosecutor engaged in misconduct by inviting jury to credit testimony of police officer because "it would take an awful lot to get an officer [to lie]"); *Coy v. State*, 720 N.E.2d 370, 373 (Ind. 1999) (noting that a prosecutor's discussion of their heightened ethical duties to seek the truth, compared to duties of defense attorney, could improperly influence jury in favor of conviction); *Sanders v. State*, 724 N.E.2d 1127, 1133 (Ind. Ct. App. 2000) ("[A]ttempting to bolster the State's witnesses by portraying the prosecutor as a pursuer of justice was impermissible."), *abrogated on other grounds by Snow v. State*, 77 N.E.3d 173 (Ind. 2017).

[43] Here, the jury heard Denney testify not as a private citizen or former attorney, but as a current deputy prosecutor employed by the *same* office prosecuting Akins's case. During its opening statement at the habitual-offender trial, the State specifically identified the two witnesses it intended to call as "deputy prosecutors." Tr. Vol. V, p. 91. Then, at the start of Denney's testimony, he identified himself as working "for the Delaware County Prosecutor's Office"

where he had "been a prosecutor on and off for a little over 25 years." *Id.* at 92. This institutional authority was reinforced when the State later presented testimony from a second deputy prosecutor.[3] As a result, the jury was presented with identification testimony from two prosecutors from the same office acting on behalf of the State.

[44] This presentation blurred the line between advocate and witness and created a substantial risk that the jury would attribute added weight to Denney's testimony based on his prosecutorial status rather than on its evidentiary value. Because Denney testified as a representative of the prosecuting authority itself, his testimony carried an inherent imprimatur of official credibility. This also invited the jury to perceive that the State stood behind the identification evidence not only as an advocate, but as a witness. *See* Prof. Cond. R. 3.7 (generally prohibiting lawyer from assuming dual role of advocate and witness in same proceeding). In some ways, this is akin to a prosecutor vouching for a witness, which is not permitted. *See Lainhart*, 916 N.E.2d at 938 ("It is . . . inappropriate for the prosecutor to make an argument which takes the form of personally vouching for a witness.").

[45] Given these ethical and procedural considerations, the State's decision to present identification testimony from Denney, its own deputy prosecutor, was

---

[3] Akins does not advance a separate argument concerning the testimony of this second deputy prosecutor. However, this prosecutor similarly identified herself as currently working as a prosecutor for Delaware County and recalled that she had "personally prosecuted" Akins. Tr. Vol. V, p. 98.

inconsistent with the prosecutor's special responsibility under Rule 3.8 to pursue justice without exploiting the institutional authority of the office. Indiana law does not permit the State to place the prestige of the prosecutor's office behind its proof in this manner.

[46]  Though we determine the prosecutor here engaged in misconduct, it does not rise to the level of fundamental error.

## B.  Fundamental Error

[47]  Where, as here, a claim of prosecutorial misconduct is not properly preserved for appeal, the defendant must establish that the misconduct constituted fundamental error. *Cooper*, 854 N.E.2d at 835. Fundamental error is an extremely narrow exception to the waiver rule, reserved for cases in which the error was so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* We consider all that occurred at trial and all relevant information before the jury, including the evidence admitted, closing arguments, and jury instructions, to determine whether the misconduct had an undeniable and substantial effect on the jury's decision. *White v. State*, 25 N.E.3d 107, 128 (Ind. Ct. App. 2014). Akins has not met this demanding standard.

[48]  Akins first argues that without Denney's testimony, the evidence supporting the habitual-offender finding would be insufficient. We disagree. "To adjudicate a defendant [a] habitual offender, the State must sufficiently connect the defendant to the prior felony convictions alleged in the information." *Lyons v.*

*State*, 244 N.E.3d 471, 472 (Ind. Ct. App. 2024), *reh'g denied*. "[C]ertified copies of judgments . . . containing a defendant's name or a similar name may be introduced to prove the commission of prior felonies." *Id.* (quoting *Payne v. State*, 96 N.E.3d 606, 611-12 (Ind. Ct. App. 2018), *trans. granted then vacated*). "However, there must be supporting evidence to identify the defendant as the person named in the documents." *Id.* (same).

[49] This proof of identity—the core issue in Akins's case—may be established through circumstantial evidence. *See Hernandez v. State*, 716 N.E.2d 948, 953 (Ind. 1999). "If the evidence yields logical and reasonable inferences from which the finder of fact may determine beyond a reasonable doubt that it was a defendant who was convicted of the prior felony, then a sufficient connection has been shown." *Id.*

[50] Here, the State introduced certified court records from a 2001 felony armed robbery case and a 2018 felony possession of methamphetamine case. These records, admitted as Exhibits 11 and 12, included the charging informations, probable cause affidavits, judgments of convictions, and sentencing orders for each case. They identified the person who sustained the felony convictions as "Reginald D. Akins" and "Reginald Dean Akins Jr." Exhs. Vol. VI, pp. 17, 29.

[51] The State also incorporated all the evidence presented in the first phase of trial, which included a certified Indiana Bureau of Motor Vehicles (BMV) record that undisputedly belonged to Akins, the defendant in the instant case. That BMV record included Akins's full name (Reginald Dean Akins Jr.), date of birth, full

Social Security number, and a list of his prior addresses. The identifying information in Exhibits 11 and 12—the defendant's name, date of birth, last four digits of his Social Security number, and home address—matched the information in Akins's BMV record.

[52] Akins did not object to the admission of these exhibits, did not dispute the accuracy of the identifying information they contained, and did not present any evidence suggesting that the convictions belonged to a different individual.[4] Though a matching name and date of birth is not sufficient to establish identity, *Payne*, 96 N.E.3d at 612, the records here contain more: matching Social Security numbers and addresses. Thus, the jury was presented with unchallenged documentary evidence with matching identifying information sufficient to tie Akins to the prior felonies. *See Walker v. State*, 813 N.E.2d 339, 341 (Ind. Ct. App. 2004) (finding matching name, date of birth, and driver's license number sufficiently proved identity).

[53] Against that backdrop, Denney's testimony was limited and cumulative. He confirmed that he represented Akins in the 2001 armed robbery case and stated

---

[4] Because Akins's misconduct claim focuses on Denney's testimony, his argument here centers on Exhibit 11, the records from the case in which Denney represented him. Akins concedes that the date of birth and Social Security number listed in Exhibit 11 matches his BMV record. However, he claims the names do not: some documents in Exhibit 11 refer to "Reginald D. Akins" while the BMV lists "Reginald Dean Akins Jr." However, other documents in Exhibit 11 use Akins's full name as written in the BMV record. In any case, this minor variation does not defeat the inference that the records refer to the same person. *See Lyons*, 244 N.E.3d at 472 (permitting records containing "a defendant's name or similar name"); *Oster v. State*, 992 N.E.2d 871, 877 (Ind. Ct. App. 2013) (finding slight variations in name—including "Thomas W. Oster," "Thomas Oster," and "Thomas William Oster II"—were sufficiently similar to support inference that they referred to same person).

his former client's date of birth, Social Security number, and date of conviction—information already contained in Exhibit 11. Nor was Denney's testimony required to lay a foundation for the admission of Exhibit 11. *See Payne*, 96 N.E.3d at 613 (finding certified court records are self-authenticating). The only unique piece of information introduced by Denney's testimony was his identification of Akins in a photograph. But, as discussed above, the other pieces of matching identifying information were sufficient to prove Akins's identity without this photo-identification.

[54] Finally, Akins claims that even if the evidence is sufficient without Denney's testimony, the probable impact of the misconduct was substantial. However, he does not further develop this argument. And looking to the trial record as a whole, we are not persuaded that the jury was improperly influenced by the prosecutor's misconduct. *See White*, 25 N.E.3d at 128. In its closing statement, the State pointed to the BMV record as providing matching identifying information. The jury was instructed that the State bore the burden of proving habitual-offender status beyond a reasonable doubt and that its determination must be based on the evidence admitted, not bias, and the law as instructed. During their deliberations, jurors sought clarification regarding the habitual-offender law, and the trial court directed them to reread the instructions, reinforcing that their decision must rest on the legal standards provided.

[55] In light of all the evidence and instructions before the jury, the misconduct did not have an undeniable and substantial effect on the verdict. *See id.*

Accordingly, the prosecutorial misconduct here did not constitute fundamental error.

## Conclusion

[56] The canine alert, considered under the totality of the circumstances, supported probable cause for the search of Akins's vehicle under the Fourth Amendment to the United States Constitution. It also rendered the search reasonable under Article 1, Section 11 of the Indiana Constitution. And although the State committed prosecutorial misconduct during the habitual-offender phase by calling its own prosecutor as an identification witness, that misconduct did not rise to the level of fundamental error. We therefore affirm.

May, J., and Foley, J., concur.

ATTORNEY FOR APPELLANT

Lisa Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana